**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
ARTHUR FISHBEIN, JAMES CROWLEY, JANET :
SACHS, HERBERT POBINER, LOUIS FLACKS, :
and PAUL BERKMAN, as TRUSTEES OF THE :
UNION MUTUAL MEDICAL FUND, and the :
UNION MUTUAL MEDICAL FUND, :
                                     :
              Plaintiffs,            :
                                     :  06 Civ. 13222(BSJ)(GWG)
         v.                          :  **Opinion and Order**
                                     :
GEORGE MIRANDA, CHARLES HALL, JR., :
MARTIN KEANE, MARTIN SHEER, and :
THOMAS MACKELL, JR., in their :
capacities as TRUSTEES OF THE ALLIED :
WELFARE FUND; GEORGE MIRANDA, ROBERT :
BELLACH, ANTHONY CERBONE, MARTIN :
SHEER, JOHN DOES 1-6 in their :
capacities as TRUSTEES OF TEAMSTERS :
LOCAL 210 AFFILIATED HEALTH AND :
INSURANCE FUND, and CROSSROADS :
HEALTHCARE MANAGEMENT, LLC., :
                                     :
              Defendants.            :
------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 11/16/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Arthur Fishbein, James Crowley, Janet Sachs,

Herbert Pobiner, Louis Flacks, and Paul Berkman, as Trustees of

the Union Mutual Medical Fund (collectively, "Plaintiff UMMF

Trustees") and the Union Mutual Medical Fund ("Plaintiff UMMF,"

and together with Plaintiff UMMF Trustees, "Plaintiffs")

commenced this action on November 15, 2006.  On June 24, 2008,

Plaintiffs filed an Amended Complaint.  The Local 210 Affiliated

Health and Insurance Fund ("Defendant Local 210 Fund") now moves

pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of

1

Civil Procedure to dismiss the first, second, and third causes

of action in the Amended Complaint on the grounds that (1)

Plaintiffs lack standing; (2) Plaintiffs have failed to state a

claim upon which relief may be granted; and (3) this Court lacks

subject matter jurisdiction over the action. For the reasons

stated below, Defendant Local 210 Fund's Motion is DENIED as to

the first and second causes of action in the Amended Complaint

and GRANTED as to the third cause of action.

## BACKGROUND[1]

This case arises out of a set of collective bargaining

agreements ("CBAs") pursuant to which Defendant Local 210 Fund

and the Allied Welfare Fund ("Defendant AWF") collect

contributions from employers and then remit a portion of these

contributions to Plaintiff UMMF. Plaintiffs allege that

Defendants Local 210 Fund and AWF failed to remit to Plaintiff

UMMF employer contributions received by Defendants Local 210

Fund and AWF and properly owed to Plaintiff UMMF under the terms

of the relevant CBAs.

Plaintiff UMMF is a multi-employer, collectively bargained

group health plan protected and governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"). (Am. Compl. ¶

2.) Plaintiff UMMF Trustees is a group of trustees of Plaintiff

---

[1]      The following facts are drawn from the allegations in the Amended
Complaint. They are assumed to be true only for the purposes of the
instant Motion to Dismiss.

UMMF.  (Id.)  The participants and beneficiaries of Plaintiff
UMMF are primarily retired members of two unions:  (1) the
Allied Trades Council, Division Local 338, Retail, Wholesale and
Department Store Union-United Food and Commercial Workers, AFL-
CIO (the "ATC"), and (2) the International Brotherhood of
Teamsters Local Union 210 ("Local 210," and together with the
ATC, the "Unions").  (Id.)  Local 210 was known as the
International Brotherhood of Teamsters Local Union 815 ("Local
815") until April 2005, when the two Locals were merged
together.  (Id.)

Defendants Local 210 Fund and AWF are both multi-employer,
collectively bargained "employee welfare benefit plans"
established to provide life insurance, health insurance, and
other benefits for their participants.  (Am. Compl. ¶¶ 8, 11.)
The participants in Defendant AWF are primarily active union
workers, and those in Defendant Local 210 Fund are primarily
active employees of Local 210 and its predecessor, Local 815.
(Id. ¶¶ 8, 11.)  Defendant AWF was divided in or about April
2006, and a portion of Defendant AWF's assets were transferred
to Defendant Local 210 Fund.  (Id. ¶ 10)  Defendant Local 210
Fund is a successor in interest, in whole or in part, to
Defendant AWF.  (Id. ¶ 11.)

Plaintiff UMMF is funded primarily through contributions by
employers ("Contributing Employers") who are parties to CBAs

with the Unions. (Am. Compl. ¶ 5.) Under the CBAs,
Contributing Employers are required to make contributions to
Defendants AWF and Local 210 Fund for the benefit of both active
and retired Union workers. (Id.) According to Plaintiffs'
allegations, the CBAs further require Defendants AWF and Local
210 Fund to remit a portion of the funds collected from
Contributing Employers to Plaintiff UMMF. (Id.)

Plaintiffs allege that in or about December 2005, and again
in January 2006, Defendant AWF and Crossroads Healthcare
Management ("Defendant Crossroads") tried to bring about a
merger between Defendant AWF and Plaintiff UMMF. (Am. Compl. ¶
27.) Plaintiff UMMF refused this merger based on a variety of
reasons, including Plaintiffs' concern that Plaintiff UMMF's
assets could be diverted to support active Union members, thus
diminishing the benefits of retirees. (Id.)

Plaintiffs allege that Defendants AWF and Local 210 Fund
have retaliated against Plaintiffs for refusing this merger
offer. On or around August 31, 2006, participants in Plaintiff
UMMF received a letter indicating that they were eligible for
coverage under a new retiree health plan, the Teamsters Local
210 Affiliated Health and Insurance Fund Retiree Group Health
Plan. (Am. Compl. ¶ 38.) On or about September 16, 2006,
George Miranda ("Defendant Miranda"), a current or former

4

trustee of both Defendant AWF and Defendant Local 210 Fund,[2] sent a letter to participants in Plaintiff UMMF indicating that contributions to Plaintiff UMMF were being redirected to Defendants AWF and/or Local 210 Fund to fund health benefits for both active and retired workers.  (Id. ¶ 39.)  Plaintiffs also claim that Defendant Crossroads has provided false and misleading information to participants in Plaintiff UMMF, such as indicating that the Local 210 Retiree Plan was a successor to Plaintiff UMMF.  (Id. ¶ 40.)

Remittances from Defendant AWF to Plaintiff UMMF dropped from $60,000-$74,000 per month in early 2006 to $450 in October 2006.  (Am. Compl. ¶ 41.)  Plaintiffs allege that this drop was due to Defendants AWF and Local 210 Fund's efforts to solicit participants away from Plaintiff UMMF and to siphon contributions from Plaintiff UMMF.  (Id. ¶ 42.)  Plaintiffs further allege that Defendants AWF and Local 210 Fund possess monies properly owed to Plaintiff UMMF under the relevant CBAs, but that Defendants AWF and Local 210 Fund have withheld these funds.  (Id. ¶ 50(2).)

Duane Reade, Inc., Duane Reade, and DRI I, Inc. (collectively, "Duane Reade") have a CBA (the "Duane Reade CBA")

---

[2]     Defendants Miranda, Charles Hall, Sr., Martin Keane, Martin Sheer ("Defendant Sheer"), and Thomas Mackell, Jr. ("Defendant AWF Trustees") are each current or former trustees of Defendant AWF.  (Am. Compl. ¶ 8.)  Defendants Miranda, Sheer, Robert Bellach, Anthony Cerbone, and John Does 1-6 ("Defendant Local 210 Fund Trustees") are each current or former trustees of Defendant Local 210 Fund.  (Id. ¶ 11.)

with the ATC.  (Am. Compl. ¶ 20.)  The Duane Reade CBA required

Duane Reade to contribute fifty-nine dollars per employee per

week to Defendant AWF.  (Id.)  Defendant AWF, in turn, was

required under the Duane Reade CBA to remit eight dollars per

employee per week of the Duane Reade contributions to Plaintiff

UMMF.  (Id.)

For a period of time beginning in or about 2000, Duane

Reade failed to contribute funds to Defendant AWF, and thus to

Plaintiff UMMF.  (Am. Compl. ¶ 21.)  Plaintiffs allege that in

or about March 2006, the ATC and Duane Reade reached a

settlement (the "Duane Reade Settlement").  (Id. ¶ 24.)

Plaintiffs state that Defendant AWF has already received

approximately $850,000.00 in settlement monies from Duane Reade,

and that more funds are to be paid by Duane Reade to Defendant

AWF and/or to its successor in interest, Defendant Local 210

Fund.  (Id.)

Plaintiffs allege that Defendant AWF is required by the

Duane Reade CBA to pay Plaintiff UMMF a portion of the funds

received under the Duane Reade Settlement.  (Am. Compl. ¶ 25.)

Plaintiffs state that the ATC and Defendant AWF currently

possess monies received under the Duane Reade Settlement that

are properly owed to Plaintiff UMMF pursuant to the Duane Reade

CBA.  (Id. ¶ 46(2).)  According to Plaintiffs, the ATC and

Defendant AWF have refused to provide Plaintiff UMMF Trustees

6

with any information relating to the Duane Reade Settlement.
(Id. ¶ 26.)

On November 15, 2006, Plaintiffs filed the instant action
in the United States District Court for the Southern District of
New York alleging violations of sections 515, 404(a), 409(a),
and 406(b)(2) of ERISA, 29 U.S.C. §§ 1145, 1104(a), 1109(a), and
1106(b)(2), violations of the Health Insurance Portability and
Accountability Act of 1976, 42 U.S.C. § 1320 et seq. and of
state and common law privacy laws, and breach of fiduciary duty
and breach of contract.  Plaintiffs filed an Amended Complaint
on June 24, 2008.  Defendants now move to dismiss Counts One,
Two, and Three of the Amended Complaint.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure
provides for dismissal of a complaint that fails to state a
claim upon which relief may be granted.  "In ruling on a motion
to dismiss for failure to state a claim upon which relief may be
granted, the court is required to accept the material facts
alleged in the complaint as true."  Frasier v. Gen. Elec. Co.,
930 F.2d 1004, 1007 (2d Cir. 1991).  The court is also required
to read a complaint generously, drawing all reasonable
inferences from its allegations in favor of the plaintiff.  See
California Motor Transp. Co. v. Trucking Unlimited, 404 U.S.
508, 515 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1940 (2009).

In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2nd Cir. 1993) (citation omitted); see also Hayes v. Coughlin, No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.").

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The requirement that a plaintiff demonstrate constitutional standing is a jurisdictional prerequisite to suit in federal court. Thus, if Plaintiffs lack standing under Article III of the U.S. Constitution, there is no subject matter jurisdiction and the Court must dismiss this case. See Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) ("If [plaintiff] lacks standing, we lack subject matter jurisdiction to entertain a request for such relief."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

## DISCUSSION

### I.   Claims for "Appropriate Equitable Relief" Under

### ERISA § 502(a)(3)(B)

Under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), a "participant, beneficiary, or fiduciary" of an employee benefit plan may bring a civil suit "to obtain other appropriate equitable relief (i) to redress . . . violations or (ii) to enforce . . . the terms of the plan." Plaintiffs make claims for equitable relief under this section, demanding an accounting of all monies received from Duane Reade pursuant to the Duane

9

Reade Settlement and a judgment ordering Defendants AWF and

Local 210 Fund to remit to Plaintiff UMMF the same percentage of

the Duane Reade Settlement monies as would be owed to Plaintiff

UMMF under the Duane Reade CBA.   Plaintiff further demands an

accounting of all monies received by Defendants AWF and Local

210 Fund since January 1, 2005 pursuant to all CBAs in which

Plaintiff is named and a judgment ordering Defendants to

relinquish all monies owing to Plaintiff UMMF under these CBAs.

Defendant Local 210 Fund moves to dismiss Plaintiffs'

claims under this section, arguing that (1) the terms of the

CBAs, including the Duane Reade CBA, are not enforceable against

Defendant Local 210 Fund because Defendant Local 210 Fund is not

a party to the CBAs; (2) Plaintiffs lack standing to sue under

the CBAs or to demand a portion of the Duane Reade Settlement

because they are not parties to or intended third party

beneficiaries of the CBAs or of the Duane Reade Settlement; and

(3) the remedies that Plaintiffs seek are not cognizable as

"appropriate equitable relief" under ERISA § 502(a)(3)(B).   The

Court addresses each of these arguments in turn, and finds all

to be without merit.

## 1.   Enforceability of the Relevant CBAs Against Defendants AWF
## and Local 210 Fund

Under New York law, those who are not parties to a contract

cannot be held liable in the event of its breach.   See HDR, Inc.

v. Int'l Aircraft Parts, Inc., 683 N.Y.S.2d 867, 867 (N.Y. App.
Div. 1999) ("Neither of these defendants was a party to the
contract alleged to have been breached. As such, they cannot be
bound by the contract."); see also D'Antonio v. Metro. Transp.
Auth., No. 06 Civ. 4283, 2008 WL 582354, at *7 (S.D.N.Y. Mar. 4,
2008) ("It is hornbook law that a non-signatory to a contract
cannot be named as a defendant in a breach of contract action
unless it has thereafter assumed or been assigned the contract."
(internal quotation omitted)).

However, contracts may be enforced against non-signatories
"where the non-signing party has accepted the written agreement
and has acted upon it." Argo Marine Sys., Inc. v. Camar Corp.,
755 F.2d 1006, 1011 (2d Cir. 1985); see also Henneberry v.
Sumitomo Corp. of Am., No. 04 Civ. 2128, 2005 WL 991772, at *12
(S.D.N.Y. Apr. 27, 2005) (same). In such a circumstance, "a
non-signatory to a written contract [is], through its own
consent, . . . bound by its terms. That consent can be
manifested by both the party's words and its actions." Am. Rock
Salt Co., LLC v. Norfolk S. Corp., 180 F. Supp. 2d 420, 422
(W.D.N.Y. 2001).

The Second Circuit has held that an obligation to make plan
contributions under ERISA is not dependent on the obligee having
signed the relevant CBA. In Brown v. C. Volante Corp., the
appellant argued that because it had not signed the CBAs in

11

question, "it did not make a 'written agreement' to contribute to the Fund" and thus was not bound by the terms of the CBAs. 194 F.3d 351, 355 (2d Cir. 1999). The court, however, found that the "[b]ecause there is no dispute that the unsigned CBAs set forth a sufficiently detailed basis on which the payments were to be made, the only question is whether appellant's conduct manifested an intent to adopt, or agree to, the unsigned CBAs." Id.; see also Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers, AFL-CIO, et al., No. 05 Civ. 259, 2008 WL 312096, at *7 (E.D.N.Y. Feb. 1, 2008) ("A collective bargaining agreement need not be signed so long as the parties agree to its substantive terms. Rather, a court should examine the surrounding circumstances and the conduct of the parties to ascertain the parties' intent." (internal citations omitted)). In Brown, where the appellant's conduct included "contribut[ing] to the Fund at the rate prescribed by the unsigned CBAs," 194 F.3d at 355, the court held that the appellant had "manifested an intent to adopt the terms of the unsigned CBAs," id. at 355 n.1.

In the instant case, Plaintiffs allege that "[u]nder the CBAs, Contributing Employers are obligated to make contributions for the benefit of both active and retired Union workers to the [AWF] and, more recently, also to defendant [Local 210 Fund]." (Am. Compl. ¶ 5.) Plaintiffs state that "[p]ursuant to the

12

CBAs, the trustees of [Defendants AWF and Local 210 Fund] are required to remit a portion of the monies collected from Contributing Employers to the UMMF." (Id.) Plaintiffs further state that Defendants AWF and Local 210 Fund accepted the terms of the CBAs by complying with their obligation to remit monies to Plaintiff UMMF until on or about April 1, 2006. (See id. ¶¶ 5, 41.)[3]

Under their plain terms, the relevant CBAs obligate Defendants AWF and Local 210 Fund to accept funds from Contributing Employers and then to remit a certain percentage of such funds to Plaintiff UMMF.[4] The Duane Reade CBA, for one, mandates:

---

[3] Plaintiffs also state that "the Local 210 Fund is a successor in interest, in whole or in part, to the AWF." (Am. Compl. ¶ 11.) New York law indicates that there are multiple situations in which a successor entity may assume the contractual obligations of its predecessor. See, e.g., Schumacher v. Richards Shear Co., 451 N.E.2d 195, 198 (N.Y. 1983); Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003). In this case, however, it is unnecessary to evaluate whether Plaintiffs properly alleged that Defendant Local 210 Fund is a successor-in-interest to Defendant AWF, since Defendant Local 210 Fund admits this point in its Motion. (See Defs. Mot. Dismiss 10 (referring to "the AWF and its successor in interest, the 210 Fund").)

[4] Plaintiffs do not include any CBAs as exhibits to the Amended Complaint. However, as the Second Circuit has noted, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). "Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156-67 (2d Cir. 2006) (internal quotation omitted). Rather, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002); see also Cortec, 949

13

[C]ommencing with the week ending September 1, 2005 .
. . the Employer shall pay to the Allied Welfare Fund
the sum of Eighty ($80.00) Dollars; and commencing
with the week of September 1, 2006, the sum Eighty-
Five ($85.00) Dollars; and commencing with the week
September 1, 2007, the sum of Ninety ($90.00) Dollars
each . . . week for each employee who is employed
within the bargaining unit.

.       .       .

From out of the contributions made to the Allied
Welfare Fund as specified above, Eight Dollars ($8.00)
per employee per week shall be unconditionally and
irrevocably allocated and paid to the Union Mutual
Medical Fund subject to the provisions of an indenture
effective September 6, 1978 and any amendments,
changes or additions thereto, for the benefit of
retired employees of the Employer and retired
employees of all other employers similarly situated.

(Thompson Decl. Ex. D ("Duane Reade CBA") 11, 13.[5])

Plaintiffs adequately allege that Defendants AWF and Local

210 Fund have accepted their obligations under the relevant CBAs

to remit monies to Plaintiff UMMF in accordance with the terms

---

F.2d at 48 ("Where plaintiff has actual notice of all the information
in the movant's papers and has relied upon these documents in framing
the complaint the necessity of translating a Rule 12(b)(6) motion into
one under Rule 56 is largely dissipated.").

In the instant case, Plaintiffs rely heavily on the CBAs relevant to
their relationship with Defendants AWF and Local 120 Fund in the
Amended Complaint and quote directly from the provision in these CBAs.
(See Am. Compl. ¶¶ 5-7, 12, 20 (discussing terms of CBAs).)  Therefore,
the Court deems the CBAs incorporated by reference, and considers them
in evaluating Plaintiffs' claims.

5    The provision requiring Defendants AWF and/or Local 210 Fund to remit
     eight dollars per week to Plaintiff UMMF is identical in all but one of
     the eighteen CBAs submitted by Defendant Local 210 Fund in its Motion.
     (Compare Thompson Decl. Exs. A-I, K-R (containing language identical to
     that in the Duane Reade CBA) with id. Ex. J 23 ("From and out of the
     contributions made to [Defendant Local 210 Fund] as specified above,
     ten cents (10¢) per employee per week shall be unconditionally and
     irrevocably allocated and paid to the Union Mutual Medical Fund.").

14

of these agreements. The surrounding circumstances likewise indicate that Defendants AWF and Local 210 Fund intended to be bound by these agreements.

Because Plaintiffs have sufficiently alleged that the relevant CBAs are enforceable against Defendants AWF and Local 210 Fund, Defendant Local 210 Fund's Motion to Dismiss Counts One and Two of the Amended Complaint on the grounds that it is not bound to these contracts must be DENIED.[6]

## 2.  Plaintiffs' Standing to Sue Under the CBAs and to Demand a

### Portion of the Duane Reade Settlement

Under the test outlined in the Restatement (Second) of Contracts and followed by New York courts, a plaintiff claiming third party beneficiary status must allege: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the

---

[6]   The CBAs in question do not specify a governing law. (See Thompson Decl. Exs. A-R.)  The Contributing Employers and the Unions in all of the CBAs are domiciled in either New York or New Jersey, but these CBAs do not specify a domicile for either Defendants AWF and Local 210 Fund or for Plaintiff UMMF. (See id.)  Therefore, from the information at hand, it appears that the CBAs should be interpreted under the law of either New York or New Jersey.  New York and New Jersey law do not conflict on this point, and Defendant Local 210 Fund's Motion would be denied under either standard. See, e.g., Childs v. Meadowlands Basketball Assocs., 954 F. Supp. 994, 999 (D.N.J. 1997) (noting that an enforceable contract may be adopted "without reducing the agreement to writing, and . . . what really is crucial is conduct manifesting an intent to be bound by agreed-upon terms" (internal quotation omitted)). Therefore, this Court applies New York law on the question. See IBM Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

15

benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." State of Cal. Publ. Employees' Ret. Sys. v. Sherman & Sterling, 741 N.E.2d 101, 104 (N.Y. 2000); see also Levin v. Tiber Holding Corp., 277 F.3d 243, 248-49 (2d Cir. 2002).[7] If the plaintiff is able to establish these points, the plaintiff may have enforceable rights under the contract in question. See, e.g., Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir. 1991).

New York law further provides that "[a]n intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991) (citing Restatement (Second) of

---

[7]    New Jersey law also follows the Restatement (Second) of Contracts with respect to the rights of third-party beneficiaries. See Broadway Maint. Corp. v. Rutgers, the State Univ., 447 A.2d 906, 909 (N.J. 1995) ("The contractual intent to recognize a right to performance in the third person is the key. . . .   When the contract is silent, it is necessary to examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent."); Jama v. U.S. Immigration & Naturalization Serv., 334 F. Supp. 2d 662, 686 (D.N.J. 2004) ("Both federal and New Jersey cases on third party beneficiary status draw upon the Restatement and the Restatement (Second) of Contracts."). Therefore, New York and New Jersey law do not conflict on this point, and the Court applies New York law. See IBM Corp., 363 F.3d at 143 (finding that if no conflict of law exists, there is no need to do a choice of law analysis and the district court may apply New York law).

Contracts § 302(b) (1981)). The obligation to perform to the third party beneficiary need not be expressly stated in the contract, since in determining third party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as of the agreement. Id. However, "[a] third-party beneficiary exists . . . only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." McPheeters v. McGinn, Smith & Co., 953 F.2d 771, 773 (2d Cir. 1992).

In the instant case, Plaintiffs adequately allege that "[t]he UMMF is an intended third-party beneficiary under the CBAs." (Am. Compl. ¶ 7.) First, the requirement of valid and binding contracts between other parties is satisfied since Plaintiffs allege that the Unions entered into valid CBAs with the various Contributing Employers. (See id. ¶¶ 5, 12.) Second, Plaintiffs establish that the contract was intended for Plaintiffs' benefit. (See id. ¶ 12 ("On information and belief, those CBAs provide that a portion of such contributions are to be remitted by the Local 210 Fund to the UMMF.").) Third, the Plaintiffs establish that benefit to them under the CBAs is immediate rather than incidental, since Plaintiffs allege that the CBAs provide that "[f]rom and out of the contributions made to the Allied Welfare Fund as specified above, Eight Dollars per

17

employee per week shall be unconditionally and irrevocably allocated and paid to [Plaintiff UMMF]." (Id. ¶ 6.)

Plaintiffs have also adequately established their standing to demand that Defendants AWF and Local 210 Fund provide the Duane Reade Settlement documents and an accounting of the monies received by Defendants under this settlement and that Defendants remit to Plaintiff UMMF its rightful portion of these monies under the Duane Reade CBA. As with its allegations regarding the other CBAs, Plaintiffs establish all three elements required to state a claim that Plaintiff UMMF was an intended third-party beneficiary to the CBA between Duane Reade and Defendant AWF. (See Am. Compl. ¶¶ 20, 6.) As an intended third-party beneficiary of the Duane Reade CBA, Plaintiff UMMF has standing to demand that Defendants AWF and Local 210 Fund remit the proper portion of Duane Reade's contributions under the Duane Reade CBA to Plaintiff UMMF. See, e.g., Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990) (deciding, under section 515 of ERISA, that benefit fund trustees had standing to sue to enforce the terms of a CBA because "[t]he Funds occupy the position of a third party beneficiary of the collective bargaining agreement"). Accordingly, because the Duane Reade Settlement monies came to Defendant AWF in order to satisfy Duane Reade's obligations under the Duane Reade CBA, and Plaintiff UMMF has established

18

that it is a third-party beneficiary to that CBA, Plaintiffs

have standing to demand the Duane Reade Settlement documents, an

accounting of the monies received under that settlement, and

Plaintiff UMMF's rightful portion of the settlement proceeds.[8]

Because Plaintiffs have adequately stated a claim as third-

party beneficiaries under the CBAs, including the Duane Reade

CBA, Plaintiffs will be allowed to proceed on this claim and

Defendant Local 210 Fund's Motion to Dismiss Counts One and Two

for lack of standing is DENIED.

3.    "Appropriate Equitable Relief" Under ERISA § 502(a)(3)(B)

Because section 502(a)(3) authorizes only equitable relief,

a court may order only "those categories of relief that were

typically available in equity" pursuant to that provision.

Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361

(2006).  Whether restitution is a legal or equitable remedy

depends on "the basis for the plaintiff's claim and the nature

of the underlying remedies sought."  Great-West Life & Annuity

Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002) (internal

quotations omitted).  A plaintiff may seek restitution in equity

"where money or property identified as belonging in good

---

8       Contrary to Defendant Local 210 Fund's argument in its Motion,
        Plaintiffs were not required to intervene in the Duane Reade litigation
        in order to preserve their rightful share of the Duane Reade settlement
        proceeds.  See, e.g., Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S.
        356, 362-63 (2006) (allowing appellant to recover under ERISA §
        502(a)(3) out of settlement monies paid to appellant despite
        appellant's non-intervention in underlying state court litigation).

conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id.; see also id. ("For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.").

In the instant case, the accounting and restitution sought by Plaintiffs falls within the ambit of "other appropriate equitable relief" permitted under section 502(a)(3). Plaintiffs allege that Defendants AWF and/or Local 210 Fund possess specifically identifiable funds that in equity and good conscience belong to Plaintiffs: namely, proceeds from the Duane Reade Settlement and monies from the weekly contributions made by Contributing Employers between January 2005 and the present that are rightfully Plaintiffs' under the terms of the CBAs. (See Am. Compl. ¶¶ 5-9, 12, 20, 24-27.) Plaintiffs further allege that these specifically identifiable funds are either currently within the possession and control of Defendants AWF and Local 210 Fund or will be paid to the Funds in the near future. (See id.)

Similarly, the award of interest sought by Plaintiffs falls within the scope of "other appropriate equitable relief" available under section 502(a)(3)(B), since such interest prevents Defendants' unjust enrichment at Plaintiffs' expense.

As the Second Circuit stated in Dunnigan v. Metro. Life Ins.
Co., "[w]here interest is sought to make the plaintiff whole by
eliminating the effect of a defendant's breach of a fiduciary
duty, we see no reason why such interest should not be deemed
"appropriate equitable relief" within the scope of §
502(a)(3)(B)."   277 F.3d 223, 229 (2d Cir. 2002).   Moreover,
"the mere fact that money is sought does not necessarily
classify the relief as damages, rather than equitable relief."
Id.; see also id. ("Equity sometimes awards monetary relief."
(internal quotation omitted)).

Finally, Plaintiffs' request for an accounting of all
monies received under the relevant CBAs falls squarely within
the category of equitable remedies.   See, e.g., Rodgers v.
Roulette Records, Inc., 677 F. Supp. 731, 738 (S.D.N.Y. 1988)
(noting that "an accounting . . . is an action in equity").

Because the remedies that Plaintiffs seek in Counts One and
Two constitute "other appropriate equitable relief" under
section 502(a)(3) of ERISA, Defendant Local 210 Fund's Motion to
Dismiss these causes of action on the basis that the remedies
are not cognizable under the statute is DENIED.[9]

II.   Employer Liability Pursuant to ERISA § 515

---

[9]     This result would be the same under the law of New Jersey.  See Jarwick
Developments, Inc. v. Wilf, 2006 WL 3685881, at *6 (N.J. Super. Ct.
Dec. 15, 2006) ("[A]n accounting is an equitable remedy."); IBM Corp.,
363 F.3d at 143.

21

Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. ERISA further defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).[10] This definition includes "a group or association of employers acting for an employer in such capacity." Id.

The Second Circuit has noted that "the 'in the interest of' language encompasses those who act for an employer or directly assume the employer's duty to make plan contributions." Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 575 (2d Cir. 1995); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 36-37 (2d Cir. 1994) (holding that the president of a corporation who under a collective bargaining agreement had assumed a personal obligation to make pension contributions was an employer liable under section 515).

---

[10] Although this definition of "employer" does not apply of its own force to the term "employer" as used in ERISA § 515, 29 U.S.C. § 1145, the Second Circuit has adopted this definition in the context of multi-employer plans such as the one at issue here. See, e.g., Trustees of the Building Serv. 32B-32J Pension v. Zar Realty Mgmt. Corp., No. 97 Civ. 6446, 1999 WL 791682, at *2 (S.D.N.Y. Sept. 30, 1999) (citing Korea Shipping Corp. v. New York Shipping Ass'n ILA Pension Trust Fund, 880 F.2d 1531, 1537 (2d Cir. 1989)).

However, absent "any type of agency or ownership relationship or direct assumption of the employer's functions with regard to the administration of a plan," Greenblatt, 68 F.3d at 575, courts in this circuit have been reluctant to find employer status for the purpose of section 515, see, e.g., Mason Tenders Dist. Council Welfare Fund v. Logic Constr. Corp., 7 F. Supp. 2d 351, 356 (S.D.N.Y. 1998) (refusing to find that an assignee was acting in the interest of employer defendant when the assignee "has no ownership relationship with [defendant]" and "did not directly assume [defendant's] obligations under those agreements or its functions with regard to the administration of any of the plans"). For example, in Building Serv. 32B-J Health Fund v. Impact Real Estate Mgmt., Inc., the court refused to find that defendant was an "employer" under section 515 even though the defendant "engage[d] in certain actions which are typical of employers, namely, hiring, firing, and supervising employees" and "also 'handled' payments to the employee benefit funds." No. 00 Civ. 1343, 2000 WL 1530009, at *4 (S.D.N.Y. Oct. 16, 2000). Even with these findings, as Judge Sweet indicated, the defendant might be acting "merely as an administrative intermediary between the Funds and/or the Union, on the one hand, and the building owners, on the owner" rather than as an employer under ERISA. Id.

23

In those cases that have found defendants acting "in the interest of" an employer for purposes of section 515, the relevant entity has been empowered to negotiate benefit plans on behalf of the employer itself.  See, e.g., Trustees of the Building Serv. 32B-32J Pension v. Zar Realty Mgmt. Corp., No. 97 Civ. 6446, 1999 WL 791682, at *2 (S.D.N.Y. Sept. 30, 1999) (finding that an employer association was an employer under ERISA based on the fact that the association was empowered to enter into a collective bargaining agreement on behalf of corporate owners of buildings); Local 217 Hotel & Restaurant Employees Union v. MHM, Inc., 805 F. Supp. 93, 113-14 (D. Conn. 1991) (holding that a hotel management firm that negotiated benefit plan with insurance carriers on behalf of hotel was employer under ERISA).

In the instant case, Plaintiffs allege that "[i]nasmuch as the AWF accepts contributions from employers for the ultimate benefit of the UMMF and its participants, the AWF acts indirectly in the interest of an employer in relation to the UMMF.  The AWF also serves as custodian of assets for [Plaintiff] UMMF."  (Am. Compl. ¶ 9.)  Plaintiff alleges identical activity on the part of Defendant Local 210 Fund, and similarly claims that "[Defendant] Local 210 Fund . . . acts indirectly in the interest of an employer, within the meaning of 29 U.S.C. § 1002(5)."  (Id. ¶ 12.)

24

Plaintiffs' allegations do not indicate that Defendants AWF and/or Local 210 Fund act as employers or in the interest of employers under the relevant CBAs; rather, Defendants act as intermediaries between the Contributing Employers and Plaintiffs. Defendants AWF and Local 210 Fund are clearly not authorized to negotiate on behalf of the Contributing Employers. According to Plaintiffs' own allegations, Defendants AWF and Local 210 Fund are Union-organized employee plans founded primarily to provide benefits for employees of active Union workers. (See Am. Compl. ¶¶ 8, 10 11.)

Because Plaintiff cannot establish that Defendants and/or Defendant Local 210 Fund are employers under the terms of ERISA § 515, Defendant Local 210 Fund's Motion to Dismiss Count Three of the Amended Complaint must be GRANTED.

III. Subject Matter Jurisdiction Over Plaintiff's Claims

In Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., the Supreme Court held that ERISA sections 502(g)(2) and 515 do not confer subject matter jurisdiction over claims "to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the [National Labor Relations Act]." 484 U.S. 539, 108 (1988). According to the Court, sections 502(g)(2) and 515 confer jurisdiction only over claims for "promised contributions," not over unfair labor

practice claims that an employer has refused to bargain in good faith by failing to make post-contract benefit plan contributions before negotiations for a new contract reached an impasse.  See id. at 548-49.

As the Second Circuit has since noted, Advanced Lightweight "stands only for the unremarkable proposition that the National Labor Relations Board generally has exclusive jurisdiction over unfair labor practice claims."  Brown, 194 F.3d at 354.  Where plaintiff's claims are for "contributions owing in accordance with the terms and conditions of a collective bargaining agreement," on the other hand, the district court has subject matter jurisdiction.  Id. (citing 29 U.S.C. § 1145).

In the instant case, Plaintiffs seek to enforce Defendants' obligation to make contributions in accordance with the conditions of the relevant CBAs.  Therefore, Plaintiffs' claims clearly fall within this Court's ERISA jurisdiction under section 502(a)(3).

Because this Court has subject matter jurisdiction over the claims alleged in Plaintiffs' first count, Defendants' Motion to Dismiss for lack of jurisdiction is DENIED.

### CONCLUSION

For the reasons set forth above, Defendant Local 210 Fund's Motion to Dismiss is DENIED as to Counts One and Two of the Amended Complaint and GRANTED as to Count Three.

SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           November 16, 2009