UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEON SILVERMAN, JAMES CROWLEY, JANET
SACHS, HERBERT POBINER, LOUIS FLACKS,
and PAUL BERKMAN, as TRUSTEES OF THE
UNION MUTUAL MEDICAL FUND, and
UNION MUTUAL MEDICAL FUND,

                             Plaintiffs,

      - against -                         **OPINION AND ORDER**

                                                   06-CV-13222 (ER)

GEORGE MIRANDA, ROBERT BELLACH,
ANTHONY CERBONE, MARTIN SHEER, and
JOHN DOES 1-6 in their capacities as Trustees
of TEAMSTERS LOCAL 210 AFFILIATED
HEALTH AND INSURANCE FUND, and
CROSSROADS HEALTHCARE MANAGEMENT,
LLC,

                             Defendants.
------------------------------------------------------------x

Ramos, D.J.:

       This litigation concerns a long-fought ERISA dispute, the merits of which are of little significance to today's decision. In 2006, Plaintiffs brought suit against defendants George Miranda, Robert Bellach, Anthony Cerbone, Martin Sheer, and John Does 1-6 in their capacities as Trustees of the Fund, and Crossroads Healthcare Management, LLC (collectively, "Defendants") alleging underpayment of employer contributions in violation of collective bargaining agreements governed by ERISA.

       On January 7, 2013, the Honorable Barbara S. Jones entered an order that, *inter alia*, awarded Plaintiffs $2,460,777.33, as well as pre- and post-judgment interest (the "Judgment").[1]

---

[1] The instant action was reassigned to this Court on June 13, 2013. Doc. 244.

1

Doc. 221. On January 23, 2013, the Fund filed a motion for reconsideration. Doc. 224. Plaintiffs filed a cross-motion for sanctions on February 11, 2013. Doc. 231. On January 31, 2013, the Fund filed a notice of appeal with the United States Court of Appeals for the Second Circuit, appealing the entry of the Judgment. Doc. 229.

On April 4, 2013, the Court entered a Stipulation and Order Governing Stay of, and Security for, Judgment (the "Stipulation"). Doc. 241. Pursuant to the Stipulation, the Fund withdrew its motion for reconsideration and Plaintiffs withdrew their cross-motion for sanctions. The Stipulation also called for the creation of an escrow account to secure payment of the Judgment.

Pending before the Court is the Fund's motion to amend the Stipulation pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure in order to substitute a supersedeas bond for the escrowed funds used to secure the appeal of the Judgment. Doc. 254. For the reasons discussed below, Defendant's motion is DENIED.

**I. Background**

a. *The Stipulation*

In relevant part, the Stipulation requires Local 210 to deposit funds in the amount of $2,873,466.50, representing 111% of the total of the Judgment as well as interest and costs, from an escrow account into a trust account created by Plaintiffs' attorneys. Within two days of the entry of the Stipulation, Plaintiffs were required under the agreement to wire the money received in the trust account to the Clerk of this Court. As relevant to the instant motion, the parties agreed that "the Escrow Account shall serve in lieu of a supersedeas bond."

On November 4, 2013, exactly seven months after the entry of the Stipulation, the Fund filed the instant motion to set aside the Stipulation pursuant to Rule 60(b)(5) of the Federal Rules

2

of Civil Procedure. Defendant argues that there was a significant change of circumstances that warrants the modification of the Stipulation. Specifically, though the Stipulation specifies that Defendant's appeal is to be secured by escrowed funds, and not a supersedeas bond, Defendant was still actively seeking a bond following the entry of the Stipulation on April 4, 2013. Indeed, on or about April 20, 2013, M&T Bank informed Defendant that it would approve a letter of credit for an appeal bond, which was ultimately issued with an effective date of May 2, 2013, less than one month after the entry of the Stipulation. Def. Mem. L. 2.

Though the appeal bond was issued in May 2013, the Fund did not file its motion until six months later, in November 2013. Defendant's counsel informed the 210 Fund Trustees at their quarterly meeting on May 7, 2013, that an application would need to be made with the Court to substitute the bond for the escrowed funds, and that any substitution would need to be litigated if Defendant did not obtain Plaintiffs' consent. *Id.* at 2-3. Plaintiffs advised Defendant on May 20, 2013 that they would not consent to the substitution. *Id.* at 3.[2] Counsel apparently needed to wait until the Trustees' next quarterly meeting on August 22, 2013 to discuss how to proceed without Plaintiffs' consent. *Id.* at 4. On September 9, 2013, Defendant requested leave to file a Rule 60(b) motion. *Id.*

On October 1, 2013, the Court held a pre-motion conference regarding Defendant's application to file a Rule 60(b) motion. At the conference defense counsel made clear that the instant motion comes down to a matter of preference for Defendant. Defendant's counsel acknowledged that his client would have been content to keep the funds in the escrow account as of June 2013 because "the market was pretty much in turmoil," and the Trustees therefore

---

[2] While Defendant argues that "the application to the Court was further complicated because the case was closed and the presiding judge had retired in early January 2013," the matter was reassigned almost immediately upon Defendant's letter to the Court in June 2013. Def. Mem. L. 3.

3

decided that it was not "a good time" to make the substitution. Oct. 1, 2013 Tr. 5:12-13 (Thompson). Then, in the August 2013 quarterly meeting, "investment counsel for the Fund indicated that, in their view, . . . the market had bottomed out and that they should do something about it." Tr. 5:21-23 (Thompson). When questioned by the Court regarding the state of the market at the time of the conference, Defendant's counsel informed that the Trustees would "definitely" wish to proceed with the modification of the Stipulation. Tr. 6:1 (Thompson).

Defendant's argument is essentially two-fold. First, it contends that M&T Bank's notice of approval on April 20, 2013 was "a significant change in circumstances warranting modification of [the Stipulation]." Def. Mem. L. 7. Second, Defendant argues that the Stipulation should be set aside because Defendant "will be denied the opportunity of realizing greater returns on its money" if the Court does not approve the substitution, and that the agreement would therefore be "substantially more onerous." *Id.* at 5. According to Defendant, the appeal bond would allow for "investing its money in higher yielding assets while preserving the security of the judgment." *Id.* at 7. Defendant further claims that the substitution of the bond would be "suitably tailored to resolve the problem created by the change in circumstances." *Id.* at 8.

Plaintiffs make two principal arguments in response. First, Plaintiffs contend that Rule 60(b)(5) does not empower the Court to reform a contract that has been fully performed. Pls. Mem. L. 4. According to Plaintiffs, the Stipulation is a private contractual agreement, entered by the Court as an order, and that therefore Rule 60(b)(5) does not apply. *Id.* Second, Plaintiffs argue that, even if Rule 60(b)(5) were found to apply, it would be inequitable to grant Defendant's motion because there were no unforeseen changed circumstances. Specifically, Plaintiffs state that at the time the Fund proposed the Stipulation, "it was currently seeking a

4

bond and knew it would likely obtain one had it been more diligent." *Id.* at 6.

Plaintiffs further argue that granting the instant motion would be inequitable because the "the proposed bond . . . would deprive the UMMF of the benefit of the very bargain that it contracted for": specifically, the UMMF "was prepared to execute on the Judgment . . . and invest[] the long overdue contributions" when the Fund proposed the escrow account and the withdrawal of its motion for reconsideration. *Id.* at 10. According to Plaintiffs, the UMMF "relinquished these rights, and the investment gains it could have realized over the past year, solely in exchange for the substantive benefits of the Stipulation," which include "the opportunity to secure the Judgment in full and *in cash*." *Id.*

## II. Legal Standard

"'Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases.'" *Crawford v. Franklin Credit Mgmt., Corp.*, No. 08 Civ. 6293 (JFK), 2013 WL 2951957, at *1 (S.D.N.Y. June 14, 2013) (quoting *Canale v. Manco Power Sports, LLC*, No. 06 Civ. 6131, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010)); *see also Lipin v. Hunt*, 573 F. Supp. 2d 830, 833 (S.D.N.Y. 2008) ("'Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances. A motion seeking such relief is addressed to the sound discretion of the district court . . . .'" (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986))). Indeed, "[r]elief under Rule 60(b) is only warranted if the [movant] presents 'highly convincing' evidence that demonstrates 'extraordinary circumstances' justifying relief." *Hoffenberg v. United States*, No. 00 Civ. 1686, 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010) (quoting *James v. United States*, 603 F. Supp. 2d 472, 478 (E.D.N.Y. 2009)).

Rule 60(b)(5) provides that the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment has been satisfied, released, or

discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60. "It is usually applied where a party seeks relief from either an injunction or a consent decree and can show 'a significant change either in factual conditions or in law.'" *Thompson v. City of New York*, No. 04-CV-2355 (FB) (RML), 2010 WL 1005866, at *2 (E.D.N.Y. Mar. 16, 2010) (quoting *Agostini v. Felton*, 521 U.S. 203, 215, 117 S. Ct. 1997 (1997)).[3]

For the reasons discussed below, Defendant's request is misplaced under the framework of Rule 60(b)(5).

### III. Discussion

#### a. *The Final Order Requirement*

In order for Rule 60 to apply, the motion in question must seek relief from "a *final* judgment, order, or proceeding . . . ." Fed. R. Civ. P. 60 (emphasis added). As the Committee Notes for Rule 60 make clear, "[t]he addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." This Court has noted that "[a] final order is defined as 'one which terminates the litigation between the parties [on] the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.'" *Kurzweil v. Philip Morris Cos.*, Nos. 94 Civ. 2373 (MBM), 94 Civ. 2546 (MBM), 1997 WL 167043, at *3 (S.D.N.Y. Apr. 9, 1997) (quoting *Black's Law Dictionary* 567 (5th ed. 1979)); *see also Black's Law Dictionary*

---

[3] *See also Crawford*, 2013 WL 2951957, at *1 ("Rule 60(b)(5) relief often arises in the context of 'institutional reform litigation,' in which prospective reforms embodied in judgments are reviewed for inequitable application because of changed circumstances.").

6

889 (9th ed. 2009) (defining an interlocutory order as an order that is "interim or temporary; not constituting a final resolution of the whole controversy"). Final orders and judgments under Rule 60(b) bear the same definition as "final decision" for purposes of 28 U.S.C. § 1291. *See, e.g.*, *Kapco Mfg. Co. v. C&O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985); *Butler v. United Healthcare of Tenn., Inc.*, No. 3:07-CV-465, 2011 WL 3300674, at *1 (E.D. Tenn. Aug. 1, 2011).

Here, the Stipulation does not terminate the instant litigation, but instead provides security for Defendant's appeal of the Judgment. Clearly, the Stipulation does not resolve the merits of the dispute. Accordingly, Defendant's motion necessarily fails under Rule 60(b)(5).

b. *Change in Circumstances*

Even if Defendant's motion was properly raised under Rule 60, it would fail for the further reason that the alleged "changed circumstances" are insufficient to invoke Rule 60(b)(5). As the Supreme Court specified in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992), a party must demonstrate that there was "a significant change either in factual conditions or in law." The changed circumstances must not be speculative or insubstantial, *United States v. County of Nassau*, 907 F.2d 397, 397 (2d Cir. 1990) (per curiam), or have been within the control of the party seeking relief. *Allergan, Inc. v. Sandoz Inc.*, Nos. 2:09-CV-97, 2:09-CV-348, 2:09-CV-200, 2:09-CV-344, 2013 WL 6253669, at *3 (E.D. Tex. Dec. 3, 2013). Defendant's motion fails under this standard.

Defendant argues that the change in circumstances warranting relief under Rule 60(b)(5) was M&T Bank's April 20, 2013 approval of the letter of credit for the appeal bond. According to Defendant, M&T Bank provided notice on March 11, 2013 that it would approve the letter of credit, but that the process would take another two weeks. Def. Mem. L. 1. It was only when

7

Plaintiffs caused Defendant's investment and operating accounts to be frozen days later that Defendant "concluded that the promised [letter of credit] would never be forthcoming and that an arrangement other than an appeal bond would be necessary to stay the judgment." *Id* at 2. Then, more than two weeks later, on April 20, 2013, M&T Bank "surprised" the Fund by approving the letter of credit. *Id.*[4] However, given that Defendant was actively engaged in the application process for the bond at the time the Stipulation was entered into, and that M&T Bank had explicitly informed Defendant that the letter of credit would be approved, the purported change in circumstances here was not particularly significant. *Cf. Giles v. Coughlin*, No. 95 Civ. 3033 (JFK), 1997 WL 433437, at *4 (S.D.N.Y. Aug. 1, 1997) (request to modify consent decree to permit prison officials to allow inmate to be placed in tuberculin hold denied where "the alleged change in circumstances, i.e., [plaintiff's] exposure to active [tuberculosis], was clearly anticipated at the time the parties entered into the . . . decree.").[5] Here too, Defendant was on notice weeks before the signing of the Stipulation that M&T Bank would approve the letter of credit, but that it would take some more time. That the bank then ultimately approved the letter of credit it stated it would approve only a few weeks after the entry of the Stipulation does not rise to the level of significance required of changed circumstances on a Rule 60(b)(5) motion.

Moreover, and equally fatal to Defendant's argument, at the October 1, 2013 pre-motion conference, Defendant admitted that it brought the instant motion simply to seek a better bargain on an agreement the parties entered into voluntarily. Rule 60(b)(5) does not countenance such an

---

[4] Defendant describes this turn of events in dramatic fashion: in Defendant's view, "[t]he circumstances abruptly changed on April 20, 2013," and, "[n]eedless to say, the Trustees were surprised by M&T Bank's unanticipated action." Def. Mem. L. 6.

[5] Though the fact that Rule 60(b)(5) motions typically regard consent decrees frustrates comparisons to Defendant's motion, certain principles from such cases can be applied to the facts here.

application.  In *Commodity Futures Trading Commission v. Kelly*, 736 F. Supp. 2d 801 (S.D.N.Y. 2010), the court considered a similar motion under Rule 60(b)(5).  There, a former commodities trader who had years earlier agreed to a consent order permanently barring him from engaging in commodities-related activities sought to dissolve the injunction in order to become an investment advisor.  *Id.* at 802-03.  The CFTC "strenuously oppose[d]" the motion and contended that the plaintiff "ha[d] not made the requisite showing of an unforeseen change of circumstances." *Id.* at 803.  The court denied the request, noting that "the permanent bar on [the plaintiff's] participation in the futures industry . . . was, at the very least, an implicit premise underlying the consensual resolution of the . . . actions against him." *Id.* at 804.  The court thus "[d]eclined [the plaintiff's] invitation to disturb this implicit bargain among him, the CFTC, and the sentencing court." *Id.*  Here, the bargain Defendant hopes to disrupt is explicit:  the parties specifically agreed that the escrowed funds would take the place of a supersedeas bond.  Moreover, Plaintiffs make compelling arguments as to why granting the instant motion would be inequitable to the UMMF.  The Court will not set aside the Stipulation simply because Defendant finds it less beneficial now than at the time of signing.

Accordingly, to the extent Defendant's motion can even be raised under Rule 60, Defendant's arguments do not meet the standard for modification under Rule 60(b)(5).

## IV. Conclusion

For the reasons set forth above, Defendant's motion to set aside the Stipulation is DENIED. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 254). It is SO ORDERED.

Dated:    July 28, 2014
             New York, New York

                                                    Edgardo Ramos, U.S.D.J.