UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LEON SILVERMAN, JAMES CROWLEY, JANET
SACHS, HERBERT POBINER, LOUIS FLACKS,
and PAUL BERKMAN, as TRUSTEES OF THE
UNION MUTUAL MEDICAL FUND, and
UNION MUTUAL MEDICAL FUND,

                    Plaintiffs,

          - against -                            **OPINION AND ORDER**

                                              06 Civ. 13222 (ER)

GEORGE MIRANDA, ROBERT BELLACH,
ANTHONY CERBONE, MARTIN SHEER, and
JOHN DOES 1-6 in their capacities as Trustees
of TEAMSTERS LOCAL 210 AFFILIATED
HEALTH AND INSURANCE FUND, and
CROSSROADS HEALTHCARE MANAGEMENT,
LLC,

                    Defendants.
-----------------------------------------------------------------x

Ramos, D.J.:

       This litigation concerns a long-fought dispute over the right to contributions made

pursuant to Collective Bargaining Agreements ("CBAs").  In 2006, Trustees of the Union

Mutual Medical Fund (the "UMMF") and the UMMF (collectively, "Plaintiffs") brought suit

against individuals in their capacities as Trustees of the Teamster Local 210 Affiliated Health

and Insurance Fund (the "Local 210 Fund"), the "Local 210 Fund", and Crossroads Healthcare

Management, LLC ("Crossroads," collectively, "Defendants") alleging underpayment of

employer contributions in violation of the CBAs.  After significant motion practice and various

rulings by the district court, on January 4, 2013, the Honorable Barbara S. Jones entered an order

that, *inter alia,* awarded Plaintiffs $2,460,777.33, as well as pre- and post-judgment interest (the

"Judgment").[1]  On January 31, 2013, the Local 210 Fund filed a notice of appeal with the United States Court of Appeals for the Second Circuit, appealing the entry of the Judgment.  Doc. 229. On August 1, 2014, the Second Circuit vacated the judgment in favor of Plaintiffs, finding Plaintiffs had failed to state claims under ERISA, and remanded to this Court to determine whether to exercise supplemental jurisdiction over counts one and two, construed by the Second Circuit as asserting state law breach of contract claims.  Doc. 266.

Pending before this Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants' motion for release of the escrowed funds, and Plaintiffs' motion for prejudgment attachment of the escrowed funds pursuant to Rule 64 of the Federal Rules of Civil Procedure.

For the reasons discussed below, Plaintiffs' Summary Judgment motion is DENIED, Defendants' Summary Judgment motion is GRANTED in part and DENIED in part, Plaintiffs' Motion for Prejudgment Attachment is DENIED, and Defendants' Motion for Release of the Escrowed Funds is GRANTED.

## I.  Background

### a.  Factual Background[2]

Plaintiff UMMF is a collective bargaining group health plan under ERISA that was established in 1978 to obtain and provide medical and insurance benefits to its participants and beneficiaries, who are primarily retired union members of two unions, the Allied Trades Council and the International Brotherhood of Teamsters Local Union 210 (the "Local 210 Union"), and

---

[1] The instant action was reassigned to this Court on June 13, 2013.  Doc. 244.

[2] The following facts are taken from the parties' statement of material facts, submitted pursuant to Local Rule 56.1, and are undisputed unless otherwise noted.  Because of this action's extensive litigation, the Court assumes knowledge of certain relevant facts.

their spouses.[3]  Defendant Local 210 Fund is an employee welfare benefit plan under ERISA and

was established to provide health insurance to its members and their spouses, who are primarily

current members of the Local 210 Union.  The Local 210 Fund is funded by contributions from

employers ("Contributing Employers") who, in addition to the unions, are parties to the CBAs.

The CBAs direct Contributing Employers to contribute funds to the Local 210 Fund.[4]  Under the

CBAs, the Local 210 Fund is directed to remit a portion of the contribution from the

Contributing Employers to the UMMF:

> It is hereby agreed . . . the Employer shall pay to the Allied
> Welfare Fund the sum of Fifty–Nine ($59.00) Dollars, each and
> every week for each employee who is employed within the
> bargaining unit . . . .From and out of the contributions made to the
> Allied Welfare Fund as specified above, Eight Dollars per
> employee per week shall be unconditionally and irrevocably
> allocated and paid to the Union Mutual Medical Fund . . . for the
> benefit of retired employees of the Employer and retired
> employees of all other employers similarly situated and their
> families.[5]

In 2000, the AWF trustees filed suit against Duane Reade in the Southern District of New

York, claiming that Duane Reade, as a Contributing Employer, purportedly failed to make the

required contributions under its CBA.  In 2006, the AWF and Duane Reade settled their dispute

for $825,000.  The Duane Reade settlement was received by the AWF in satisfaction of Duane

Reade's obligation under its CBA to pay contributions to the AWF.  The Local 210 Fund denies

---

[3] The Local 210 Union merged with and succeed another local, the International Brotherhood of Teamsters Local
Union 815, whose retired employees also participated in the UMMF.

[4] In April 2006, the Allied Welfare Fund ("AWF") was bifurcated and a portion of its assets (Plaintiffs contend it
was 80% while Defendants contend it was 70%) was transferred to the Local 210 Fund.  Most of the Contributing
Employers that had contributed previously to the AWF began contributing to the Local 210 Fund.

[5] The CBAs at issue all contain nearly identical provisions.  *See Fishbein v. Miranda*, 670 F. Supp. 2d 264, 274 n.5
(S.D.N.Y. 2009), *aff'd sub nom., Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund*, 761 F.3d 277
(2d Cir. 2014) ("*Miranda I*").

that it received all of the Duane Reade settlement proceeds from the AWF.  The Local 210 Fund does not contest that the UMMF received no monies from the Duane Reade settlement.

In January 2006, the Local 210 Fund began persuading Contributing Employers to amend their respective CBAs to reduce the amount of the contribution remitted to the UMMF.  In March or April 2006, the CBAs were amended and the amount of the contribution per employer per week remitted to the UMMF was reduced from eight dollars to ten cents.  The UMMF was not consulted and did not agree to the amendments.  As a result of the amendments, the amount of contributions received by the UMMF from the AWF and/or the Local 210 Fund consistently decreased each month from approximately $1,220 in April 2006 to $449 in January 2007.

Plaintiffs filed its original Complaint against Defendants in November 2006.  Doc. 1. Plaintiffs filed an Amended Complaint in June 2008 asserting six claims, three of which were against the Local 210 Fund seeking, *inter alia*, (1) an accounting of the funds received in the Duane Reade settlement and remittance of the portion claimed by the UMMF; (2) an accounting of all monies received by the AWF and the Local 210 Fund "for the period January 1, 2005, to the date of judgment" because payments to the UMMF "dropped precipitously since the end of March 2006;" and (3) an order directing the AWF and the Local 210 Fund to remit to the UMMF all employer contributions improperly withheld from the UMMF in violation of Section 515 of ERISA.  Doc. 54 at ¶¶ 44-46, 48-50, 53.[6]

---

[6] In the Amended Complaint, Plaintiffs also brought claims against the AWF and Crossroads.  The Amended Complaint asserted three separate claims, counts four, five and six, against Crossroads only.  Doc. 54.  The AWF was voluntarily dismissed from this action on July 20, 2010, Doc. 160, and Crossroads was voluntarily dismissed from this action on April 23, 2013.  Doc. 243.

### b.  Relevant Prior Decisions

#### i.  The 2009 District Court Decision

On November 16, 2009, the district court denied Defendant Local 210 Fund's motion to dismiss counts one and two of the Amended Complaint, but granted Defendants' motion to dismiss count three.  *Miranda I*, 670 F. Supp. 2d at 279.[7]  Regarding counts one and two, which the court construed as claims for relief under ERISA Section 502(a)(3)(B), the court made three relevant findings.  *First*, the court found that "Plaintiffs . . . sufficiently alleged that the relevant CBAs are enforceable against Defendants" because Defendants "accepted their obligations under the relevant CBAs to remit monies to Plaintiff UMMF in accordance with the terms of these agreements . . . and that Defendants . . . intended to be bound by these agreements."  *Id.  Second*, the court found that Plaintiffs adequately alleged that the UMMF met the three elements required to assert third party beneficiary status and that "[t]he UMMF is an intended third-party beneficiary under the CBAs[:]"

> First, the requirement of valid and binding contracts between other parties is satisfied since Plaintiffs allege that the Unions entered into valid CBAs with the various Contributing Employers. Second, Plaintiffs establish that the contract was intended for Plaintiffs' benefit.  Third, the Plaintiffs establish that benefit to them under the CBAs is immediate rather than incidental, since Plaintiffs allege that the CBAs provide that '[f]rom and out of the contributions made to the Allied Welfare Fund as specified above, Eight Dollars per employee per week shall be unconditionally and irrevocably allocated and paid to [Plaintiff UMMF].'

*Id.* at 275 (internal citations omitted).  *Third*, the court found that the relief requested by

---

[7] The court dismissed count three finding that the Local 210 Fund was not an "employer" under ERISA § 515.  *Id.* at 275.  On February 22, 2007, then-Defendant AWF filed a separate motion to dismiss under Rules 12(b)(1) and (6). Doc. 22.  In a separate order dated April 16, 2010, the district court denied AWF's motion to dismiss Plaintiffs' first and second counts, but dismissed the third count.  Doc. 118.  The court extended all findings from the November 16, 2009 Order to AWF.  *Id.*

Plaintiffs, accounting and restitution, was permitted equitable relief under ERISA Section 502(a)(3)(B). *Id.* at 276.[8]

### ii. The 2011 District Court Decision

On April 12, 2011, the district court granted Plaintiffs' motion for partial summary judgment on counts one and two and denied Defendants' motion for summary judgment in its entirety. *Fishbein v. Miranda*, 785 F. Supp. 2d 375, 393 (S.D.N.Y. 2011), *vacated sub nom.*, *Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund*, 761 F.3d 277 (2d Cir. 2014) ("*Miranda II*").[9]  The court characterized Defendants' summary judgment motion as "largely rehash[ing] arguments the Court already considered and rejected" and reaffirmed the court's 2009 Order with three relevant findings. *Id.* at 384.

*First*, the court reaffirmed its earlier 2009 Order, finding "that Plaintiffs have standing to enforce the CBAs and seek an accounting of monies received pursuant to the Duane Reade settlement because UMMF is an expressly named third-party beneficiary in the CBAs, including the one with Duane Reade." *Id.* at 384.  *Second*, the court "found Plaintiffs may enforce the CBAs against the Local 210 Fund because it accepted the CBAs and acted upon them." *Id.* at 385.  *Third*, the court found that Plaintiffs' requested relief constitute "other" forms of "appropriate equitable relief" under ERISA § 502(a)(3)(B). *Id.*  The court then held that "[i]n light of the Court's legal findings and the lack of any disputed issues of material fact regarding

---

[8] In response to Defendant Local 210 Fund's motion for reconsideration, by Order dated April 9, 2010, the court affirmed its November 16, 2009 decision.  Doc. 117.

[9] Plaintiffs moved for summary judgment on counts one, two, four, five, and six and on former-Defendant Crossroads' counterclaims. *Id.* at 378.  The court granted Plaintiffs' summary judgment motion on counts one and two. *Id.* at 393.  The court denied Plaintiffs' summary judgment motion on counts four and five, dismissing those counts because Crossroads was not a fiduciary under ERISA, and on count six. *Id.* at 389-90.  The court granted in part and denied in part Plaintiffs' motion to dismiss Crossroads' counterclaims. *Id.* at 393.

Plaintiffs' first two counts, Plaintiffs are entitled to summary judgment on both counts." *Id.* The court ordered the Local 210 Fund to provide: "(1) an accounting of all proceeds received from the Duane Reade settlement and (2) an accounting of all monies received from contributing employers from January 1, 2005 to the present." *Id.*[10]

### iii. The 2013 District Court Decision

On January 4, 2013, the district court granted in part and denied in part Plaintiffs' motion for sum certain and summary judgment as to amount owed and denied Defendants' motion for partial summary judgment seeking a determination that a lesser amount was owed. *Silverman v. Miranda*, 918 F. Supp. 2d 200, 206 (S.D.N.Y. 2013), *vacated sub nom., Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund*, 761 F.3d 277 (2d Cir. 2014) ("*Miranda III*"). The court awarded judgment in favor of Plaintiffs in the amount of $2,460,777.33 plus interest. *Id.* at 221. Plaintiffs were entitled to recover (1) the UMMF liability, amounting to $1,909,736.26 plus interest, *id.* at 212; (2) alleged overpayment amounting to $73,285.36 plus interest, *id.* at 213; (3) eighty percent of the funds, $89,491.53, from the Duane Reade settlement, *id.* at 214; (4) contributions from the Manhattan Drug Company ("MDC"), a Contributing Employer under its CBA, amounting to $103,302.64 plus interest, *id.* at 216; and (5) contributions from CBAs containing automatic renewals amounting to $284,961.54, *id.* at 219. The court also briefly addressed the impact of the court's prior rulings finding that "[t]his Court has already ruled on the issue of Defendants' contractual liability. . . .[and] it forecloses any argument that Defendants never 'accepted' the CBA terms." *Id.* at 211.

---

[10] In response to Defendants' motion for reconsideration, by order dated June 27, 2011, the court affirmed the court's 2011 decision regarding the parties' summary judgment motions but altered the dates for Defendants to submit its accounting. Doc. 181.

7

### iv.  The Second Circuit Decision

On August 1, 2014, the Second Circuit vacated the judgment in favor of the UMMF fund and remanded the action.  *Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund*, 761 F.3d 277, 289 (2d Cir. 2014) ("*Silverman*").  The Second Circuit affirmed the district court's dismissal of count three because "the [Local] 210 Fund was not obligated to remit funds to the UMM Fund 'in the interest of' an employer, [therefore] the Section 515 claim was properly dismissed." *Id.* at 285-86 ("the CBAs here contain no provision obligating the employer to pay the UMM Fund, or an assumption by the 210 Fund of such an obligation. . . . under no reading of the CBAs (pre-amendment or post-amendment) is the *employer* obligated to contribute [to] any defendant.") (emphasis original).  In regards to counts one and two, the Second Circuit found the district court erred in granting summary judgment in favor of Plaintiffs under ERISA because "the terms of each CBA were not terms of an ERISA plan." *Id.* at 280.  The Second Circuit explained that "[a]lthough the UMM Fund has failed to state a claim under ERISA, the first two claims in the Amended Complaint can be construed as state law breach-of-contract claims." *Id* at 281; *see also id.* at 288 (finding that counts one and two "me[]t the pleading requirements for state law breach-of-contract claims.").[11]

Instead of reversing and directing dismissal of all the UMM Fund's claims, the Circuit Court vacated the award to the UMMF and remanded for the district court "to consider whether to exercise supplemental jurisdiction over the first two claims, construed as alleging state law

---

[11] While the district court construed counts one and two as claims under ERISA, the Amended Complaint did not state a legal basis for the first or second counts.  The Second Circuit found it was unclear under the pleadings "whether the duty of the 210 Fund to remit funds and provide an accounting was premised on state contract law, a federal or state statute, or something else." *Id.* 282-83.

breach of contract." *Id.* at 288.[12]  While the Second Circuit acknowledged that "[f]ederal courts will normally decline to retain jurisdiction in such circumstances," the court suggested that, "in this case, it may be that discretion will be exercised in favor of retaining jurisdiction, given that most of the relevant contract law issues have already been briefed by the parties and decided in a trio of opinions" but took "no position on whether those issues were correctly decided" and explained it had "no occasion to consider the calculation of the award, or the denial of attorney's fees." *Id.*  The Circuit also noted that "[t]he 210 Fund may enjoy additional defenses to state law claims for breach of contract, including ERISA preemption" but "express[ed] no view on the merits of such a defense." *Id.* at 288 n.4.

Circuit Judge Calabresi concurred with the majority opinion and affirmed the dismissal of count three. *Id.* at 289.  In regards to counts one and two, Judge Calabresi dissented because the district court's "factual finding" that the language and circumstances of the CBAs made them an ERISA plan "was not appealed" but "note[d] that if the district court were to find a state law contract breach for the same reasons that it found a violation of ERISA, then the district court would likely reach the same result as before." *Id.*

### c.  The Instant Motions

On October 9, 2014, a pre-motion conference was held before this Court, at which Defendants were granted leave to file its motion for release of the escrowed funds, Plaintiffs were granted leave to file its motion for prejudgment attachment of the escrowed funds, and both parties were granted leave to file cross-motions for summary judgment.

---

[12] The Circuit found that "the Amended Complaint recites supplemental jurisdiction as a proper basis for subject matter jurisdiction" "because a breach of contract claim was pleaded against a defendant who was later voluntarily dismissed" *Id.*

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). When both parties move for summary judgment, "neither side

10

is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986)).

## III.  Discussion

### a.  Supplemental Jurisdiction

The decision to exercise supplemental jurisdiction over state law claims once the claims over which the district court had original jurisdiction have been dismissed "is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 117 (2d Cir. 2013). "When, as in this case, a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the case by considering several related factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (citing *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1191 (2d Cir. 1996)). The instant action has been pending in the Southern District of New York since 2006. The court has decided multiple dispositive motions and issued a final judgment in this case. *See id.* ("there is a particularly strong case for retaining jurisdiction because the Court has not only spent considerable time dealing with the legal issues and becoming fully conversant with the facts but also has" resolved all factual disputes). Moreover,

11

the state law claims currently at issue are "analytically identical" to the ERISA claims the court previously decided.  *See Lundy*, 711 F.3d at 118 (explaining that the Second Circuit "ha[s] upheld the exercise of supplemental jurisdiction in situations when as here the 'state law claims are analytically identical' to the federal claims") (citing *Benn v. City of New York*, 482 Fed. App'x 637, 639 (2d Cir. 2012)).  As such, these factors support the Court's exercising of supplemental jurisdiction.

Additionally, the parties do not oppose the Court's exercise of supplemental jurisdiction over the remaining causes of action and, as discussed above, the Second Circuit expressly encouraged the district court to retain jurisdiction due to its familiarity with the instant action. *Silverman*, 761 F.3d at 288.  This Court will therefore exercise supplemental jurisdiction over the remaining causes of action.

### b.  Construing Counts One and Two as Breach of Contract Claims

The Second Circuit held that "[a]lthough the UMM Fund has failed to state a claim under ERISA, the first two claims in the Amended Complaint can be construed as state law breach-of-contract claims."  *Id.* at 281.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  As suggested by the Second Circuit, Plaintiffs' allegations sufficiently allege a claim for breach of contract.  *See Silverman*, 761 F.3d at 281.  Plaintiffs allege that the Local 210 Fund breached a valid contract, the CBAs, by failing to remit contributions owed to the UMMF under the CBAs, including a portion of the Duane Reade settlement for back contributions to the UMMF, and, as a result of the Local 210 Fund's breach, the UMMF was damaged.  *See* Pls.' Summ. J. Mem. at 17. The UMMF also contends that it has standing to sue to enforce the CBAs as an intended third

12

party beneficiary of the CBAs. *Id.* Defendants do not contest the fact that they did not remit all contributions owed to the UMMF under the original CBAs or the Duane Reade settlement. *See* Defs.' Summ. J. Mem. at 19-20; Defs.' Opp'n Summ. J. Mem. at 13-14. Defendants instead argue that because the UMMF is not an intended third party beneficiary whose consent is required to amend the CBAs, the CBAs were properly amended and the original CBAs were not breached.[13] *Id.* Defendants' argument has been consistently rejected by the district court. *See Miranda I*, 670 F. Supp. 2d at 275; Doc. 117 (denying motion for reconsideration of *Miranda I*); *Miranda II*, 785 F. Supp. 2d at 384.

"Under the test outlined in the Restatement (Second) of Contracts and followed by New York courts, a plaintiff claiming third party beneficiary status must allege: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Miranda I*, 670 F. Supp. 2d at 274 (citing *State of Cal. Publ. Employees' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104, 95 N.Y.2d 427, 435 (2000); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002)); *see also Bayerische Landesbank, New York Branch v. Aladdin*

---

[13] Defendants observe that the district court relied "solely on a footnote" in a reported case for the proposition that intended third party beneficiaries must consent to an amendment modifying its benefits under the CBAs. Defs.' Summ. J. Mem. at 22. In fact, the footnote in question correctly states the law and in turn cites to a treatise on contracts for the settled rule that "a promisor and promisee are not free to modify or discharge the promisor's duty to an intended third-party beneficiary of the contract after the beneficiary's rights have vested." *Trustees of Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 347 n.6 (S.D.N.Y. 1994) (citing Farnsworth, Contracts § 10.8, 768–69 (collecting authorities)). Moreover, Defendants' argument that if an intended third party beneficiaries' consent is required to modify the CBAs, then the Local 210 Fund's consent would also have been required to modify the amount received by the Local 210 Fund under the amended CBAs, Defs.' Summ. J. Mem. at 23-24, fails to recognize that if the UMMF's consent was required but was not received, the amendments increasing the contributions to the Local 210 Fund, by reducing the amount remitted to the UMMF, were ineffective.

*Capital Mgmt. LLC,* 692 F.3d 42, 52 (2d Cir. 2012) ("Under New York law, a third party may

enforce a contract when recognition of a right to performance in the beneficiary is appropriate to

effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends

to give the beneficiary the benefit of the promised performance.  The contract must 'clearly

evidence' an intent by the parties to permit enforcement by the third party, such that the benefit

to the third party was sufficiently immediate, rather than incidental, to indicate the assumption by

the contracting parties of a duty to compensate [the third party] if the benefit [was] lost.")

(alterations in original).  The district court previously found, and affirmed, that the UMMF is an

intended third party beneficiary of the CBAs.  *See Miranda I,* 670 F. Supp. 2d at 275; *Miranda*

*II*, 785 F. Supp. 2d at 384.[14]  However, Defendants now contend that the Second Circuit's

finding—that "under no reading of the CBAs (pre-amendment or post-amendment) is the

*employer* obligated to contribute any money to the UMM Fund," *Silverman*, 761 F.3d at 286

(emphasis original)—"inescapably" leads to the conclusion that the parties to the CBAs, the

Contributing Employers and the unions, never intended to compensate the UMMF for any loss

under the CBAs, or for the UMMF to have the right to enforce the CBAs.  Defs.' Summ. J.

Mem. at 20-21; *see also* Defs.' Opp'n Summ. J. Mem. at 14.  According to Defendants, based on

---

[14] Defendants contend that "when the Second Circuit vacated the district court's judgment, it also extinguished the precedential value of any prior district court decisions on the third party beneficiary arguments."  Defs.' R. Summ. J. Mem. at 6 (citing *Russman v. Bd. of Educ.*, 260 F.3d 114, 121 (2d Cir. 2001)).  While the Second Circuit vacated the 2011 and 2013 summary judgment decisions, the 2009 decision was upheld.  *See Silverman*, 761 F.3d 277. Moreover, the Second Circuit expressly stated that "rather than reverse and direct dismissal of all the UMM Fund's claims, we vacate *the award to the UMM Fund* and remand to the district court to consider whether to exercise supplemental jurisdiction over the first two claims, construed as alleging state law breach of contract. . . .it may be that discretion will be exercised in favor of retaining jurisdiction, *given that most of the relevant contract law issues have already been briefed by the parties and decided in a trio of opinions.*"   *Silverman*, 761 F.3d at 288 (emphasis added).  While a vacated decision may no longer bind this Court, the earlier district court decisions may be treated as persuasive authority.  *See Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010) (explaining that while a prior decision was vacated and is, therefore "not technically binding" on the court, "[w]e nonetheless treat [the decision] as persuasive authority.").  Accordingly, this Court treats the relevant portions of the district court's earlier decisions as persuasive authority.

this finding and the Second Circuit's decision in *Bayerische Landesbank*, the UMMF cannot be

an intended third party beneficiary of the CBAs.  *Id.*  Defendants' argument is without merit.

The Second Circuit's discussion regarding the Contributing Employer's obligation under

the CBAs occurred in the context of evaluating whether Plaintiffs stated a claim under Section

515 of ERISA in count three.  *See Silverman*, 761 F.3d at 285.  Plaintiffs contend that the Local

210 Fund assumed the employer's contribution obligation under the CBA and therefore violated

Section 515.  In rejecting this argument, the Circuit Court explained that the Contributing

Employers were not obligated to contribute money to the UMMF under the CBAs but recognized

that

> [t]he CBAs do provide that '[f]rom and out of the contributions
> made' to the 210 Fund, a portion 'shall be unconditionally and
> irrevocably allocated and paid to the Union Mutual Medical Fund'
> [and] [w]hether this provision contractually obligated the 210
> Fund, a non-signatory to the CBAs, to remit these funds to the
> UMM Fund is a question of contract law heavily litigated in the
> district court. A related contract question is whether, under
> relevant state law, the UMM Fund was a third-party beneficiary . .
> . .

*Id.* at 286.  While the Second Circuit noted that these contractual questions existed and were

heavily litigated in the district court, the Second Circuit did not decide or suggest that its findings

impacted the district court's previous decisions.  In the instant action, Plaintiffs do not seek to

enforce the CBAs against the Contributing Employers but rather against the Local 210

Fund, which can be held accountable under the CBAs because, while not a signatory,

Defendants "accepted their obligations under the relevant CBAs" "to accept funds from

Contributing Employers and then remit a certain percentage of such funds to Plaintiff UMMF."

*Miranda I*, 670 F. Supp. 2d at 273-74.  Even assuming Plaintiffs are not entitled to bring an

action against the Contributing Employers for lost contributions, the Second Circuit's decision

does not alter the district court's earlier findings that the UMMF may bring this action to enforce the CBAs against the Local 210 Fund.[15]  Therefore, counts one and two state claims for breach of contract under New York law.  Plaintiffs, however, are not entitled to summary judgment on counts one and two because, as discussed *infra*, while they have not abandoned or waived their claims for state law breach of contract, the claims are preempted under the Labor Management Relations Act ("LMRA") Section 301.

### c.   Abandonment or Waiver of Plaintiffs' Breach of Contract Claims

To support a finding of waiver, Defendants must show that Plaintiffs had a clear, unmistakable, and unambiguous intent to relinquish their legal rights.  *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 217 (S.D.N.Y. 2010).  To support a finding of abandonment, Defendants must show that Plaintiffs either (1) raised a claim and failed to pursue that claim, or (2) failed to respond to an argument raised by Defendants.  *See Cowan v. City of Mount Vernon*, No. 12 Civ. 6881 (KMK), 2015 WL 1400088, at *15 (S.D.N.Y. March 27, 2015) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Schulman v. Herbert E. Nass & Assoc. SEP IRA Plan*, No. 10 Civ. 9613 (RA), 2013 WL 4860119, at *3 n.5 (S.D.N.Y. Sept. 11, 2013).  Defendants do not articulate separate arguments

---

[15] Defendants reiterate the same argument, previously rejected by the district court, that the UMMF is at most an incidental beneficiary, again relying on Illustration 3 of the Restatement (Second) of Contracts § 302 and two circuit court decisions.  Defs.' Opp'n Summ. J. Mem. at 17-18 (citing *In re: Publishers Consortium, Inc.,* 345 Fed. App'x 710, 712 (2d Cir. 2009); *Public Serv. Co. of New Hampshire v. Hudson Light and Power Dept.*, 938 F.2d 338, 343 n.13 (1st Cir. 1991)); *but see Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989) (finding the plaintiff "plainly is an intended beneficiary of . . . [the] Agreement between [defendants]" despite the fact that the Agreement did not call for payment directly to the plaintiff). However, the Illustration and the circuit court decisions involve situations concerning a debt.  Because this case does not concern a debt, the Illustration and the circuit courts' decisions are inapposite.  *See Miranda*, 785 F. Supp. 2d at 384 n.12.

for abandonment and waiver.

Defendants argue that the fact that Plaintiffs characterized counts one and two as arising exclusively under ERISA, and requested equitable relief available under ERISA, and not monetary damages available for breach of contract, shows they never intended to raise breach of contract claims against Defendants, and therefore, waived or abandoned their claims.   Defs.' Summ. J. Mem. at 8-10; Defs.' Opp'n Summ. J. Mem. at 3-5.   Plaintiffs contend that waiver and abandonment are inapplicable because neither party raised or contested the UMMF's ability to seek relief based on New York state law.  Pls.' Opp'n Summ. J. Mem. at 1.   Defendants point to two specific pieces of evidence as support.  *First*, Defendants contend that their memorandum in support of their motion to dismiss characterized Plaintiffs' claims as being based in contract and that Plaintiffs opposed this characterization, reiterating that their claims were brought under ERISA.  Defs.' Summ. J. Mem. at 8-10; Defs.' Opp'n Summ. J. Mem. at 3-5.  *Second*, Defendants point to Plaintiffs' request for prejudgment interest in the amount of 5.8%,[16] and not 9%—the statutory rate of prejudgment interest for breach of contract claims—because neither ERISA nor federal law prescribes a rate of interest based on claims brought under ERISA Section 502(a)(3)(B).  Defs.' Summ. J. Mem. at 10; Defs.' Opp'n Summ. J. Mem. at 5.  Despite Defendants' contentions, Defendants establish neither abandonment nor waiver as a matter of law.

Defendants fail to show that Plaintiffs had a clear, unmistakable, and unambiguous intent to relinquish their legal rights to bring claims for breach of contract.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006)

---

[16] 5.8% interest was allegedly equal to the rate the UMMF would have received if it obtained the correct contribution from the Local 210 Fund.  Defs.' Summ. J. Mem. at 10; Defs.' Opp'n Summ. J. Mem. at 5.

("waiver of a contract right must be proved to be intentional, the defense of waiver requires a clear manifestation of an intent by plaintiff to relinquish her known right and mere silence, oversight or thoughtlessness in failing to object to a breach of the contract will not support a finding of waiver.").  Defendants do not provide sufficient evidence of Plaintiffs' "clear manifestation of an intent" to relinquish its rights under the CBAs.  To the contrary, Plaintiffs objected to Defendants' actions and have vigorously prosecuted this litigation.  While Plaintiffs originally alleged causes of action under ERISA, "it is well established that the failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim." *See Inclan v. New York Hospitality Grp., Inc.*, No. 12 Civ. 4498 (NRB), 2015 WL 1399599, at *7 (S.D.N.Y. Mar. 26, 2015) (citing *Albert v. Carovano,* 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).  In *Johnson v. City of Shelby, Mississippi*, 135 S.Ct 346, 346-47 (2014) (per curiam), the Supreme Court reversed the dismissal on summary judgment of a § 1983 claim for plaintiffs' "failure to invoke [§ 1983] in their complaint" explaining that the "[f]ederal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief; [they do] not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  Here, like in *Johnson*, Plaintiffs "stated simply, concisely, and directly events that, they alleged, entitled them to damages."  *Id.* at 347.

Additionally, Defendants do not, nor can they, argue that they were somehow surprised or prejudiced by construing Plaintiffs' claims as breach of contract claims rather than claims brought under ERISA.  *See Inclan*, 2015 WL 1399599, at *7 (rejecting the defendant's argument that summary judgment on one of plaintiff's claims was "inappropriate because such claims were not pleaded" where the amended complaint "adequately describes the substance of the plaintiffs' . . . claims" and where "defendants do not contend that they were prejudiced in any particular

way by plaintiffs' failure to invoke the [statute] specifically in the Amended Complaint"). Moreover, the Honorable Barbara S. Jones, in the instant action, previously rejected this argument—that Plaintiffs "impermissibl[e] [attempted] to raise a new claim [in its summary judgment motion] not originally advanced in this litigation"—because while "a failure to assert a claim until the last minute will inevitably prejudice the defendant," "a complaint need not correctly plead every legal theory supporting [a] claim." *Miranda III*, 918 F. Supp. 2d at 208 (citing *Beckman v. U.S. Postal Serv.,* 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)). "Where the allegations of fact made in the complaint and the evidence upon which [the] plaintiffs rely are completely descriptive of the transactions and of the roles of the actors in them as well as the evidence and allegations relevant to a determination of the claim at issue, it cannot be said that a defendant was not properly on notice." *Id.* (citing *Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 711 (2d Cir. 1980)) (alteration original). Here, "there is no prejudice or lack of fair notice to Defendants" because "Plaintiffs' theory . . .  stems from the same arguments, factual allegations, authority, and evidence on which they have relied throughout this litigation,." *Id.* at 208-09.

The cases relied on by Defendants are inapposite because the plaintiffs in those cases, unlike here, failed to pursue claims that were explicitly raised in their respective complaints.  For example, in *Schulman*, 2013 WL 4860119, at *3, the plaintiff and the defendant filed summary judgment papers only addressing the plaintiff's claims under ERISA.  However, count three of the complaint specifically alleged that Defendants also breached its contract under the Plan. *Id.* at *3 n.5.  The *Schulman* court found that "[t]o the extent Schulman seeks to bring a breach of contract claim, 'it appears that plaintiff has abandoned this claim, because it is not raised elsewhere in the record.'" *Id.* (quoting *Singleton v. City of Newburgh,* 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998)).  Here, unlike in *Schulman*, while Plaintiffs alleged facts to support a breach of

19

contract claim, *see supra* Section III.b, Plaintiffs did not explicitly assert a claim for breach of contract and then fail to raise it elsewhere during the litigation.[17]

Defendants' reliance on its purported characterization of counts one and two as claims for breach of contract is also misplaced.  Defendants' own memorandum in support of its motion to dismiss explicitly identifies Plaintiffs' first and second counts as being brought "under ERISA." *See* Doc. 72 at 2-3, 22; *see also Miranda II*, 785 F. Supp. 2d at 383 (explaining that counts one and two were "based solely on alleged violations of the CBAs, under ERISA § 502(a)(3)(B)"). Moreover, the sentence identified by Defendants as supporting its argument for abandonment, read in context, suggests only that Defendants sought dismissal of an ERISA claim, not state law contract claim.  *See* Doc. 72 at 23 ("In contrast to the equitable remedies available under Section 502(a)(3)(B), such as a constructive trust or an equitable lien, Plaintiffs seek a monetary award from the Defendant Funds based on the Plaintiffs' alleged contractual rights under the CBAs. Such relief is not available under Section 502(a)(3)(B).") (internal citations omitted).  Plaintiffs contend that "the question of whether the UMMF could recover under New York state law for breach of contract, as opposed to ERISA, was not raised by either party" and that "[t]he UMMF merely argued that under ERISA, it was entitled to, and was in fact, pursuing equitable relief in the form of an accounting and restitution."  Pls.' Opp'n Summ. J. Mem. at 3, 5.  Plaintiffs'

---

[17] The two other cases cited by Defendants are similarly inapposite.  In *Singleton*, 1 F. Supp. 2d at 312, the court determined that the plaintiff abandoned his/her claim because, while the claim is alleged in the complaint, "plaintiff does not raise[] [it] elsewhere in the record" and the plaintiff's "mere reliance on conclusory allegations contained in the Complaint" failed to set forth facts showing that a genuine issue for trial exists to withstand a motion for summary judgment.  In *Harte v. Ocwen Fin. Corp.*, No. 13 Civ. 5410 (MKB), 2014 WL 4677120, at *4 n.7 (E.D.N.Y Sept. 19, 2014), the court found while the complaint alleged that the defendant breached "various contractual agreements," the plaintiff's opposition to the defendant's motion to dismiss argued only that the defendant breached one specific contract.  Therefore, the *Harte* court found the plaintiff abandoned "any breach of contract claim based on any other of the 'various contractual agreements'" alleged in the complaint.  *Id.*  Here, Plaintiffs did not explicitly raise and then fail to address its breach of contract claims.

response to Defendants' motion to dismiss argued that Defendants "ignor[ed] the basis of

Plaintiffs' claims . . . [and] mischaracterize[d] the remedies sought by Plaintiffs as 'legal' to

evade the reach of Section 502(a)(3)(B)."  Doc. 82 at 19.  Plaintiffs' response nowhere

establishes their intention to relinquish their rights or abandon their claims for breach of contract.

Defendants have not established that Plaintiffs abandoned or waived their breach of contract

claims as a matter of law.

### d.  Preemption of Plaintiffs' Breach of Contract Claims under LMRA Section 301

While Plaintiffs did not abandon or waive their breach of contract claims, they must

nonetheless be dismissed as being preempted by the LMRA.  LMRA Section 301 provides, in

pertinent part, that "[s]uits for violation of contracts between an employer and a labor

organization representing employees in an industry affecting commerce . . . may be brought in

any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).

The Supreme Court has held that this provision completely preempts "any state cause of action"

for such violations, *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S.*

*Cal.*, 463 U.S. 1, 23 (1983) (citing *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of*

*Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968)), because Section 301 requires

that "the relationships created by [a collective-bargaining] agreement be defined by application

of an evolving federal common law grounded in national labor policy."  *Allis-Chalmers Corp. v.*

*Lueck*, 471 U.S. 202, 211 (1985) (internal quotations and citations omitted).  The Supreme Court

has described various situations where claims are preempted by Section 301:

> claims that are 'founded directly on the rights created by
> collective-bargaining agreements,' *Caterpillar Inc. v. Williams,*
> 482 U.S. 386, 395 (1987); claims that 'require[ ] the interpretation
> of a collective-bargaining agreement.' *Lingle v. Norge Div. of*
> *Magic Chef, Inc.*, 486 U.S. 399, 412 (1988); claims that are

21

> 'substantially dependent on analysis of a collective-bargaining
> agreement,' *Int'l Brotherhood of Elec. Workers v. Hechler,* 481
> U.S. 851, 859 n.3 (1987); claims that are 'inextricably intertwined
> with consideration of the terms of the labor contract,' *Allis–
> Chalmers Corp.,* 471 U.S. at 213; and claims that assert rights
> 'derive[d] from the contract,' *id.* at 217.

*Williams v. Comcast Cablevision of New Haven, Inc.*, 322 F. Supp. 2d 177, 182 (D. Conn. 2004).

However, Section 301 does not preempt "every dispute concerning employment, or

tangentially involving a provision of a collective-bargaining agreement." *Allis–Chalmers Corp.*,

471 U.S. at 211. "[I]f a claim can be resolved without construing the terms of the CBA, the state

claim may proceed" and the "fact that a CBA must be consulted or referred to . . . does not

necessarily lead to preempt[ion]." *Olivieri v. Waldbaum, Inc.*, No. 12 Civ. 1195 (SLT) (MDG),

2013 WL 5507141, at *6 (E.D.N.Y. Sept. 30, 2013). "'[I]t is the legal character of a claim, as

'independent' of rights under the collective-bargaining agreement'—and not whether a grievance

arising from the same set of facts could be pursued under the agreement—'that decides whether

a state cause of action may go forward.'" *Williams*, 322 F. Supp. 2d at 182 (alteration in

original) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123–24 (1994)). "[W]hen resolution of a

state-law claim is substantially dependent upon analysis of the terms of an agreement made

between the parties in a labor contract, that claim must either be treated as a § 301 claim, or [be]

dismissed as pre-empted by federal labor-contract law." *Vera v. Saks & Co.,* 335 F.3d 109, 114

(2d Cir. 2003) (per curiam).

"To determine whether § 301 preemption applies, the court begins with consideration of

the elements of plaintiff's stated claim" and then "considers whether adjudication of any element

of that claim requires interpretation of the parties' CBA." *Olivieri*, 2013 WL 5507141, at *6

(citing *Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1997)). As explained *supra*,

Plaintiffs allege that the Local 210 Fund breached the CBAs by failing to remit contributions

owed to the UMMF and that the UMMF has standing as an intended third party beneficiary to bring the instant action for breach of the CBAs.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer*, 632 F.3d at 799 (internal citations omitted). "Under the test outlined in the Restatement (Second) of Contracts and followed by New York courts, a plaintiff claiming third party beneficiary status must allege: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Miranda I*, 670 F. Supp. 2d at 274.

Plaintiffs' claim is ultimately one for breach of the CBAs by the Local 210 Fund for failure to remit funds to the UMMF.  This is exactly the type of claim Section 301 is meant to preempt—the rights allegedly violated derive solely from the CBA, not any independent source of state law, and, because the cause of action is for the breach of the CBAs, Plaintiffs' claim for breach of contract requires interpretation, not mere consultation, of the CBAs.  *See Lingle*, 486 U.S. at 410 n.10 ("Section 301 governs claims founded directly on the rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of collective-bargaining agreements.'") (quoting *Caterpillar*, 482 U.S. at 394-95); *see also Livadas*, 512 U.S. at 121-22 ("we have read the text of § 301 not only to grant federal courts jurisdiction over claims asserting breach of collective-bargaining agreements but also to authorize the development of federal common-law rules of decision"); *Intl. Broth. of Elec. Workers*, 481 U.S. at 857 ("The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated.") (citing

23

*Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)); *Sadowski v. Tech. Career Insts., Inc.*, 162 F.3d 1148, at *1 (2d Cir. 1998) (unpublished summary order) ("Section 301 of the LMRA preempts—in addition to claims alleging a breach of a collective bargaining agreement—claims that, although sounding in tort, are inextricably intertwined with consideration of the terms of the collective bargaining agreement.").

*First*, Plaintiffs admit, as they must, that "the UMMF's claims are based on rights granted to it in the CBAs" but contend that "it is wholly irrelevant for the purposes of LMRA preemption that the UMMF's rights are founded upon rights created by the [CBAs] . . . . What matters is whether discerning those rights requires interpretation of the CBAs, as opposed to mere consultation." Pls.' Opp'n Summ. J. Mem. at 10. Tellingly, Plaintiffs provide no citation for this proposition. *See id.*

The fact that Plaintiffs allege a violation of their rights under the CBAs requires this Court to do more than consult the CBAs. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.*, 471 U.S. at 211. Here, the precise issue is whether the UMMF is an intended third party beneficiary of the CBAs whose consent was required to amend the CBAs. If the UMMF is an intended third party beneficiary, the amendments to the CBAs are ineffective and the Local 210 Fund breached the original CBAs by failing to remit contributions owed to the UMMF.

However, if the UMMF is not an intended third party beneficiary, then the amendments to the CBAs are effective and the Local 210 Fund did not breach the amended CBAs.[18]

*Second*, Plaintiffs' claims for breach of the CBAs requires the Court do more than merely consult the CBA. While "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied" as "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," the instant case tips towards requiring an interpretation. *Wynn v. AC Rochester*, 273 F.3d 153, 157-58 (2d Cir. 2001) (per curiam) (citing *Foy*, 127 F.3d at 233). Plaintiffs contend that "the meaning of the relevant provision of the CBAs has never been contested, and is no way dependent on an analysis of the CBAs" because "whether the UMMF was an intended third-party beneficiary—the dispositive issue in this case—depends not on the language of the CBAs, but on New York contract law as applied to the language of the CBAs." Pls.' Opp'n Summ. J. Mem. at 10. Conversely, according to Defendants, "[a] key issue before this Court is whether language in the CBAs make the UMMF an intended beneficiary, as plaintiffs claim, or an incidental beneficiary, as defendants argue," Defs.' R. Summ. J. Mem. at 4, and "the parties' conflicting claims will require this Court to analyze and interpret [the CBAs]." Defs.' Opp'n Summ. J. Mem. at 11.

---

[18] Plaintiffs' contend that "the Court can simply read the relevant provisions of the CBAs, which explicitly provides the amount owed, timing, and recipient of the contributions," to determine Plaintiffs' rights under the CBAs. Pls.' Opp'n Summ. J. Mem. at 10 (citing *Lingle*, 486 U.S. at 413, n.12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled."). However, the plaintiff's rights in *Lingle* were based on state law prohibiting an employees' retaliatory discharge and were independent of the CBA. *Lingle*, 486 U.S. at 407; *see also Hernandez v. Conriv Realty Assoc.*, 116 F.3d 35, 40 (2d Cir. 1997) (finding the plaintiff's breach of contract claim, which required "a court . . . to refer to a collective bargaining agreement to determine [plaintiff's] rate of pay," was not preempted where the plaintiff's rights were based on an individual contract between the employer defendant and plaintiff and were independent of the CBA).

The Second Circuit's decision in *Wynn*, 273 F.3d 153, is instructive.  The plaintiff in *Wynn* brought an action for fraud in state court alleging that his supervisor "made certain false representations to [plaintiff] concerning [plaintiff's] right to unemployment benefits under a [CBA]."  *Id.* at 154.  The action was later removed to federal court under the LMRA.  *Id.*  In defending the district court's jurisdiction under the LMRA, the defendants argued that determining the plaintiff's fraud claim would require interpretation of the CBA.  *Id.* at 156.  The court disagreed, explaining that "there is no genuine issue between the parties concerning interpretation of the CBA.  As [defendant's] candidly admitted, the conclusion that [plaintiff] was in fact eligible for supplemental unemployment benefits is 'compell[ed]' by the plain language of the relevant agreement."  *Id.* at 158.[19]  The court explained that "where the parties agree about what the CBA provided and that the alleged statements about the CBA's terms (if

---

[19] Plaintiffs contend that "there is no dispute regarding the existence of these documents [CBAs] and the language contained therein."  Pls.' R. Summ. J. Mem. at 6 (citing Docs. 135, 301); *see also Miranda I*, 670 F. Supp. 2d at 273 ("[u]nder their **plain terms**, the relevant CBAs obligate Defendants AWF and Local 210 Fund to accept funds from Contributing Employers and then to remit a certain percentage of such funds to Plaintiff UMMF.") (emphasis added); *Miranda II*, 785 F. Supp. 2d at 384-85 ("based on the **express terms** of the CBAs . . . . Plaintiffs are a third-party beneficiary under the terms of the CBAs.") (emphasis added).  However, even if the express meaning of the CBAs is not in dispute, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.*, 471 U.S. at 211; *see also Ferrara v. Leticia, Inc.*, No. 9 Civ. 3032 (RRM) (CLP), 2012 WL 4344164, at *7 (E.D.N.Y. Sept. 21, 2012) (distinguishing "the alleged breach . . . of the CBA itself, thereby requiring interpretation of the CBA and warranting preemption under § 301" from claims based on contracts other than the CBA); *Peters v. Sikorsky Aircraft Corp.*, No. 04 Civ. 1066 (PCD), 2006 WL 2331077, at *12 (D. Conn. Aug. 10, 2006) (finding "it is well settled that federal labor law [Section 301] preempts the state law claim" for breach of the CBA because "[t]he court must construe and interpret the terms and provisions of the CBA to decide Plaintiff's breach of contract claim"); *Fuchs v. Cristal Concrete Corp.*, No. 4 Civ. 1555 (ETB), 2006 WL 2548169, at *12 (E.D.N.Y. July 18, 2006) ("claims, which are based on breach of the express terms of the agreement and are founded exclusively upon the rights and duties specified in the Agreement, fall with[in] the scope of Section 301 preemption."); *Golnik v. Amato*, 299 F. Supp. 2d 8, 20 (D. Conn. 2003) (explained that where the plaintiff "relies upon no other contract or agreement for his breach of contract claim," "his breach of contract claim is wholly dependent upon the provisions of the CBA . . . . [and] to determine whether the Defendants violated the CBA, the Court must necessarily interpret the CBA."); *Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 246 (E.D.N.Y. 2005) ("A determination of whether the defendants breached that contract necessarily requires an assessment of the rights and duties created by the CBA.").

made) were false, the fraud claim requires no interpretation of the CBA, and is therefore not preempted by § 301." *Wynn*, 273 F.3d at 159. However, the plaintiff's rights in *Wynn* were based on an independent state cause of action—the fraudulent misrepresentation of the rights enumerated in the CBA. *Id.* While Plaintiffs contend that its rights under the CBA are similar to the plaintiff's eligibility for benefits in *Wynn* because both are "unambiguously stated in the CBAs," Pls.' Opp'n Summ. J. Mem. at 10, here, Plaintiffs' rights have no independent basis separate from the CBA. The *Wynn* court itself distinguishes the instant case, explaining that "[Plaintiff's] claim is not a disguised claim for breach of the CBA. . . . His claim is not that GM did not provide what the CBA required, but that GM officials misled him into selecting one option by misrepresenting the availability of the other." *Wynn*, 273 F.3d at 159; *see also Ferrara*, 2012 WL 4344164, at *6 (finding defendant's prima facie tort counterclaim preempted where "defendant has identified no duty independent of that embodied by or included in the CBA, and therefore, any harm alleged and defenses to it would necessarily be dependent upon the CBA for their construction."). Here, Plaintiffs' claim is exactly that the Local 210 Fund did not provide what was required under the CBAs. Accordingly, Plaintiffs' breach of contract claims are preempted by Section 301.

Defendants' contention that this Court is precluded from construing these claims as federal claims brought under Section 301 is without merit. Nothing in the Second Circuit's decision limits this Court's jurisdiction to determine "only" whether supplemental jurisdiction exists over Plaintiffs' breach of contract claims. Moreover, the Second Circuit itself recognized the possibility that Plaintiffs' state law claims may be preempted. *See Silverman*, 761 F.3d at 288 n.4. Thus, the Second Circuit implicitly recognized that this Court would have to decide (1) whether Plaintiffs' claims were preempted, and, if so, (2) how this litigation would proceed.

27

While this Court finds Plaintiffs' claims are preempted, the Court grants Plaintiffs' request to move for leave to amend the Amended Complaint in order to assert claims under Section 301. *See* Pls.' Opp'n Summ. J. Mem. at 8 n.6.

### e. The Escrowed Funds

Defendants move for release of the escrowed funds posted pursuant to a stipulation entered by the parties and approved by the Court on April 4, 2013 (the "Stipulation").  Doc. 241; Defs. Mot. for Release.  Plaintiffs move for prejudgment attachment on the funds currently in escrow.  Pls.' Mot. for Prejudgment Attachment.  The Court denies Plaintiffs' motion for prejudgment attachment of the escrowed funds and grants Defendants' motion for release of the escrowed funds.

Rule 64 of the Federal Rules of Civil Procedure provides that attachment is available "under the law of the state where the [district] court is located."  FED. R. CIV. P. 64.  The grounds for attachment in New York are set out in Section 6212 of the New York Civil Practice Law and Rules ("C.P.L.R.").  "To be successful on a motion for attachment, a plaintiff must demonstrate (1) that there is a cause of action, (2) that it is probable that the plaintiff will succeed on the merits, (3) that one or more grounds for attachment provided in [C.P.L.R.] Section 6201 exist, and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  *In re Amaranth Natural Gas Commodities Litig.*, 711 F. Supp. 2d 301, 305 (S.D.N.Y. 2010) (citing C.P.L.R. 6212(a)).  "Plaintiffs' burden of proving the right to an attachment is high."  *Id.*  Moreover, "[b]ecause attachment is a harsh remedy, the statute must be strictly construed in favor of those against whom it may be applied."  *Rothberg v. Chloe Foods Corp.*, No. 06 Civ. 5712 (CPS) (KAM), 2008 WL 268061, at *7 (E.D.N.Y. Jan. 29, 2008); *see also In re Amaranth Natural Gas Commodities Litig.*, 711 F. Supp. 2d at 305; *Buy This, Inc. v. MCI*

*Worldcom Commc'n., Inc.*, 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001) ("attachment should [be] issue[d] only upon a showing that *drastic action* is required for security purposes.") (emphasis original).  While "the granting of prejudgment attachments is discretionary," *Rothberg*, 2008 WL 268061, at *7 (citing *Elliott Assoc., L.P. v. Republic of Peru,* 948 F. Supp. 1203, 1211 (S.D.N.Y. 1996)), "where a statutory ground for attachment exists and both need and likelihood of success are established, [a district court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps [not] even then."  *In re Amaranth Natural Gas Commodities Litig.*, 711 F. Supp. 2d at 305-06 (alterations in original).

Plaintiffs assert grounds for attachment under C.P.L.R. Section 6201(3), specifically, that Defendants, with the intent to "frustrate the enforcement of a judgment," disposed of or secreted its assets.  Pls.' Mem. at 11 (citing C.P.L.R. § 6201(3)).  "To establish the third element for attachment, the plaintiff must prove both that the defendant (1) has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of these acts; and (2) has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor."  *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (citing C.P.L.R. § 6201(3)).  The only elements in dispute are whether Defendants have intentionally sought to frustrate the enforcement of a judgment by disposing of its assets and whether Plaintiffs have established that there is a probability of success on the merits.[20]

---

[20] Plaintiffs assert two causes of action for breach of contract against Local 210 Fund.  Doc. 54.  Local 210 Fund does not assert any counterclaims.  Doc. 112.

Because the Court finds Plaintiffs have not established that Defendants intentionally sought to frustrate the enforcement of a judgment by disposing of its assets, the Court does not need to address Plaintiffs' probability of success on the merits.  However, as discussed *supra* at III.b, Plaintiffs have established their probability of success on the merits.

Plaintiffs argue that the third element for attachment under Section 6201 has been established based on evidence that (1) Defendants closed its bank accounts disclosed during merits discovery shortly after Plaintiffs' moved for entry of judgment and severed ties with its advisors, and (2) Defendants refused to comply with Plaintiffs' post-judgment discovery requests.  Pls.' Mem. at 3-4, 12; Decl. of Robert J. Kipnees ("Kipnees Decl.") ¶¶ 5-10.[21] Plaintiffs also contend that the Local 210 Fund has been "consistently losing money" and has had a "decrease in net income in three of the last four years," creating "an undeniable risk that if the escrowed funds are released, the Local 210 Fund will (in fact) not be able to satisfy a judgment entered against it."  Pls.' Mem. at 11-12; Kipnees Decl. ¶ 15.  Plaintiffs' arguments are unavailing.

While Plaintiffs establish, and Defendants do not deny, that it moved the accounts from Amalgamated Bank to M&T Bank and severed its relationship with certain advisors, "the mere removal or assignment or other disposition of property is not grounds for attachment."  *Aekyung Co., Ltd. v. Intra & Co., Inc.*, No. 99 Civ. 11773 (LMM), 2000 WL 10216, at *2 (S.D.N.Y. Jan. 6, 2000) (citing *Computer Strategies, Inc. v. Commodore Bus. Machs., Inc.,* 105 A.D.2d 167, 173, 483 N.Y.S.2d 716, 721 (2d Dep't 1984) (per curiam)); *see also Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 294 (E.D.N.Y. 2014) (citing *DLJ Mortg. Capital,* 594 F. Supp. 2d at 319).  Plaintiffs must also establish that Defendants moved these accounts with the intent to frustrate the enforcement of a judgment.  *See DLJ Mortg. Capital, Inc.*, 594 F. Supp. 2d at 319.  Defendants explain that its account was transferred

---

[21] Plaintiffs contend that it served interrogatories and noticed depositions on the Local 210 Fund, which were ignored until the UMMF fund served a Restraining Notice pursuant to Federal Rule 69(a)(1) and C.P.L.R. § 5222 on Defendants' new bank, M&T Bank, to secure the Judgment.  Pls.' Mem. at 13; Kipness Decl. ¶¶ 11, 12.  Plaintiffs contend that the Local 210 Fund should have informed the UMMF that it changed banks by, for example, amending its initial disclosures and/or complying with post-judgment discovery.  Pls.' Mem. at 13.

from Amalgamated Bank to M&T Bank before the district court's final judgment because of a conflict between the Local 210 Fund and Amalgamated Bank.  *See* Defs.' Release Mem. at 12-13; Defs.' Opp'n Mem. at 7-8 (explaining that Defendants closed their accounts with Amalgamated Bank because "the bank failed to meet regulatory guidelines and the high turnover rate of its money managers made the trustees uncomfortable with the bank handling the fund's money."); *see also* Decl. of Thomas A. Thompson ("Thompson Decl."), Ex. A at Response No. 5.  Defendants also contend that, like other funds, it replaced its money managers when they failed to meet the fund's investment benchmarks over a period of time.  Defs.' Opp'n Mem. at 8; Thompson Decl. ¶ 10, Ex. A at Response No. 5.   The fact that Defendants moved its account from one bank to another, by itself, does not show an intent to frustrate the enforcement of the Judgment in favor of Plaintiffs.[22]

Plaintiffs argue that Defendants' intent to frustrate the enforcement of a judgment can also be inferred from Defendants' purported failure to comply with Plaintiffs' post-judgment discovery requests.  Pls.' Mem. at 12.  However, Defendants contend that it responded to Plaintiffs' interrogatories within the timeframe required under the Federal Rules and that Defendants were in the process of determining availability and scheduling the requested depositions.[23]  *See* Defs.' Opp'n Mem. at 7; Thompson Decl. ¶ 8, Ex. A.  No intent to frustrate the Judgment can be ascribed to Defendants' response to Plaintiffs' interrogatories *within* the

---

[22] While Plaintiffs explain the lengthy process it took to obtain the information required to attach the funds to satisfy the Judgment, the fact that Defendants ultimately agreed to enter into the Stipulation—securing the Judgment at 110% of its value—belies Plaintiffs' contention that Defendants' movement of its funds to another bank was done to intentionally frustrate the Judgment.

[23] Plaintiffs filed its first set of post-judgment interrogatories on February 11, 2013.  Defendants responded on March 11, 2013, within the time period imposed by Rule 33.  *See* Thompson Decl., Ex. A; FED. R. CIV. PRO. 33 ("*Time to Respond.* The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.").

timeframe allotted by the Federal Rules.

Lastly, Plaintiffs contend that Defendants will not be able to satisfy a judgment entered against it if the escrowed funds are released.  *See* Pls.' Mem. at 12; Kipnees Decl. ¶ 15. Specifically, "in 2013, the Local 210 Fund reported a loss of net income in the amount of $1,226,811; in 2012, it reported an increase of net income in the amount of $897,876; in 2011, it reported a loss of $6,013,080 in net income; and, in 2010, its net income again decreased by $1,649,569.  Stated differently, over the last four years, the Local 210 Fund has lost $7,991,584 in net income, which is more than double the amount of the escrowed funds."  Pls.' Mem. at 12; Kipnees Decl. ¶¶ 16, 17 (internal citations omitted).  Defendants counter that they have a steady stream of funds and are able to pay any potential judgment against them.  Defs.' Release Mem. at 13.  Specifically, Defendants contend that as of December 31, 2013, "the Local 210 Fund has $11,171,120 in net assets, $41,649,457 in total income, and negative $1,226,811 in net income." Defs.' Opp'n Mem. at 8.  Defendants explain that if the fund was able to place the $2.8 million currently held in escrow with its money managers, "the fund's net income would assuredly be closer to zero."  *Id.*  The fact that Defendants have lost money in three of the four years between 2010 and 2013, does not overcome the fact that Plaintiffs fail to satisfy the elements of C.P.L.R. Section 6201(3).  *See Ames v. Clifford*, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) (noting that where defendants are "subject to the jurisdiction of the Court, attachment is only permitted upon a showing that the defendant is attempting to dispose of his assets in order to frustrate the ability of the plaintiff to collect any judgment that might ultimately be obtained.").  Accordingly, Plaintiffs' argument for prejudgment attachment of the escrowed funds fails.  The Court now turns to Defendants' motion for release of the escrowed funds.

The escrowed funds were posted pursuant to the Stipulation entered by the parties.  *See*

32

Doc. 241. The escrow account was to "serve in lieu of a supersedeas bond" while the appeal

was pending. *Id.* at ¶ 7. Under the Stipulation, if the Court of Appeals "vacates the Judgment

and remands this action to the District Court . . . the stay of the execution of the Judgment shall

expire two (2) business days after the entry of the decision and order of the Court of Appeals . .

." and upon meeting certain requirements, the parties may apply to the court to release the

escrowed funds pursuant to the Stipulation. *Id.* at ¶ 12; *see also See Revlon, Inc. v. Carson

Products Co.*, 647 F. Supp. 905, 906 (S.D.N.Y. 1986) ("Logically, a supersedeas bond securing

the stay should also be limited to the court of appeals. Consequently, the bond should be

released once the appellate court has reversed the underlying judgment."). The Second Circuit

vacated the district court's judgment and Plaintiffs do not contend that Defendants failed to

adhere to the terms of the Stipulation. Plaintiffs concede that "the literal terms of the Stipulation

no longer require the escrowed funds to be held in escrow" and provide no argument, beyond the

rejected argument that prejudgment attachment of the escrowed funds is necessary, for why the

escrowed funds should not be released pursuant to the Stipulation. Pls.' Mem. at 6.

Accordingly, under the plain language of the Stipulation, the escrowed funds should be released.

### IV. Conclusion

For the reasons set forth above:

- Plaintiffs' Motion for Summary Judgment on counts one and two is DENIED. Plaintiffs' state law claims for breach of contract are preempted by LMRA Section 301. Should Plaintiffs wish to amend the Amended Complaint to assert violations of the LMRA they shall do so by August 21, 2015.

- Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, Defendants' motion for summary judgment on counts one and two is denied, the motion for summary judgment as to the abandonment or waiver of the breach of contract claims is denied, and the motion for summary judgment as to preemption of the breach of contract claims under LMRA Section 301 is granted.

33

- Plaintiffs' Motion for Pre-Judgment Attachment is DENIED.

- Defendants' Motion for Release of Funds is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motions (Docs. 287, 291, 293, 300).

It is SO ORDERED.

Dated:     July 22, 2015
           New York, New York

                                          _____
                                          Edgardo Ramos, U.S.D.J.