UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 9/30/2016

LEON SILVERMAN, JAMES CROWLEY, JANET SACHS, HERBERT POBINER, LOUIS FLACKS, and PAUL BERKMAN, *as Trustees of the Union Mutual Medical Fund*, and UNION MUTUAL MEDICAL FUND,

      Plaintiffs,

    -against-

GEORGE MIRANDA, ROBERT BELLACH, ANTHONY CERBONE, and MARTIN SHEER, *as Trustees of the Teamsters Local 210 Affiliated Health and Insurance Fund*, and TEAMSTERS LOCAL 210 AFFILIATED HEALTH AND INSURANCE FUND,

      Defendants.

**OPINION AND ORDER**

06 Civ. 13222 (ER)

Ramos, D.J.:

  This is a decade-long dispute between two employee benefit funds concerning the right to contributions made by employers pursuant to a number of collective bargaining agreements ("CBAs"). Plaintiffs are the trustees of the Union Mutual Medical Fund ("UMMF") and the UMMF (collectively, "Plaintiffs"), and Defendants are the trustees of the Teamsters Local 210 Affiliated Health and Insurance Fund ("Local 210 Fund") and the Local 210 Fund (collectively, "Defendants"). After significant motion practice, various rulings by this Court, and an appeal to the Second Circuit Court of Appeals, Plaintiffs filed a Second Amended Complaint on August 13, 2015, alleging that Defendants failed to remit to Plaintiffs certain employer contributions as required by the CBAs, in violation of Section 301 of the Labor Management Relations Act ("LMRA"). Pending before the Court are the parties' cross-motions for summary judgment. For

the reasons set forth below, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment is DENIED.

## I. BACKGROUND[1]

Plaintiff UMMF is a collectively bargained group health plan under the Employee Retirement Income Security Act of 1974 ("ERISA") that was established to obtain and provide medical benefits to its participants and beneficiaries. Pls.' 56.1 ¶ 1. The UMMF's participants and beneficiaries primarily consist of the retired members of two unions, the Allied Trades Council and the International Brotherhood of Teamsters Local Union 210 ("Local 210 Union"), and their spouses. *Id.* ¶ 2. Defendant Local 210 Fund is an employee welfare benefit plan under ERISA that was established to provide health insurance to its participants, who are primarily current members of the Local 210 Union and their spouses. *Id.* ¶ 12.

The Allied Welfare Fund ("AWF") is also a collectively bargained employee welfare benefit plan under ERISA that provides benefits to its participants, who are primarily active union members. *Id.* ¶ 8. Both the Local 210 Fund and the AWF are funded by contributions from employers ("Contributing Employers") made pursuant to the CBAs. *Id.* ¶¶ 8, 14; *see* Defs.' Counter-56.1 ¶ 7. On April 30, 2006, the AWF was bifurcated and a portion of its assets (Plaintiffs contend it was 80% while Defendants contend it was 70%) was transferred to the Local 210 Fund. Defs.' Counter-56.1 ¶ 9. Thereafter, most of the Contributing Employers who had previously contributed to the AWF began contributing to the Local 210 Fund. Pls.' 56.1

---

[1] The following facts are taken from the parties' statements of material facts, submitted pursuant to Local Rule 56.1, and are undisputed unless otherwise noted. *See* Defendants' Statement Pursuant to Rule 56.1 of the Civil Rules of This Court ("Defs.' 56.1") (Doc. 341); Plaintiffs' Statement of Undisputed Material Facts Pursuant to Rule 56.1 and Response to Defendants' Rule 56.1 Statement ("Pls.' 56.1" and "Pls.' Counter-56.1") (Doc. 354); Defendants' Counter Statement of Material Facts to Plaintiffs' Rule 56.1 Statement ("Defs.' Counter-56.1") (Doc. 360). The Court assumes knowledge of the relevant facts and procedural history of this case, however, as they were discussed extensively in the Court's July 22, 2015 Opinion and Order. *See Silverman v. Miranda*, 116 F. Supp. 3d 289, 294–99 (S.D.N.Y. 2015) ("*Miranda IV*").

¶ 10.

The various CBAs provide, in relevant part, that:

> From and out of the contributions made to the Allied Welfare Fund as specified above, Eight Dollars per employee per week shall be unconditionally and irrevocably allocated and paid to the Union Mutual Medical Fund . . . for the benefit of retired employees of the Employer and retired employees of all other employers similarly situated and their families . . . .

*Id.* ¶ 7; *see generally* Declaration of Robert J. Kipnees, Esq., dated June 15, 2010 (Doc. 125), Ex. G (excerpts of CBAs).  Plaintiffs contend that pursuant to this provision, the AWF and, more recently, the Local 210 Fund were obligated to remit a portion of the money collected from the Contributing Employers to the UMMF.  Pls.' 56.1 ¶ 6.  Defendants deny that they were under any such obligation but admit that they paid the UMMF in accordance with the terms of the CBAs.  Defs.' Counter-56.1 ¶¶ 4, 6.

In 2000, the AWF trustees filed suit against Duane Reade in the Southern District of New York, claiming that Duane Reade, as a Contributing Employer, failed to make the required contributions pursuant to its CBA.  Pls.' 56.1 ¶ 18.  In 2006, the AWF and Duane Reade settled their dispute for $825,000.  *Id.* ¶¶ 19–20.  The Duane Reade settlement was received by the AWF in satisfaction of Duane Reade's obligation under its CBA to pay contributions to the AWF.  *Id.* ¶ 21.  Plaintiffs claim that 80% of the settlement monies were transferred to the Local 210 Fund as a consequence of the bifurcation of the AWF.  *Id.* ¶ 22.  The UMMF received no portion of those proceeds.  *Id.*

In January 2006, the Local 210 Union began persuading Contributing Employers to amend their respective CBAs to reduce the contributions remitted to the UMMF (and, necessarily, increase the contributions retained by the AWF and Local 210 Fund).  *Id.* ¶ 25.  Whereas the CBAs then in place had provided that $8.00 per employee per week would be

allocated to the UMMF, the Local 210 Union persuaded Contributing Employers that $0.10 per employee per week should be allocated to the UMMF. *Id.* ¶ 26. In March or April 2006, without the UMMF's consent, the CBAs were amended to reflect this reduction. *Id.* ¶¶ 28–29. As a result of the amendments, the monthly contributions received by the UMMF from the AWF and/or the Local 210 Fund significantly decreased, from approximately $59,000 to $74,000 per month in the first three months of 2006 to $449 in January 2007. *Id.* ¶¶ 30–31.

Plaintiffs sued Defendants in November 2006, seeking remittance of the employer contributions allegedly due, including a portion of the proceeds from the Duane Reade settlement. Doc. 1.[2] In June 2008, Plaintiffs filed an Amended Complaint. Doc. 54. Construing Plaintiffs' allegations as claims under ERISA, the district court awarded judgment in favor of Plaintiffs in the amount of $2,460,777.33 plus interest. *Silverman v. Miranda*, 918 F. Supp. 2d 200 (S.D.N.Y. 2013) (Jones, J.) ("*Miranda III*"), *vacated sub nom. Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277 (2d Cir. 2014) ("*Silverman*").[3] The Second Circuit vacated the award, finding that Plaintiffs failed to state claims under ERISA, and remanded the action for the district court to consider whether to exercise supplemental jurisdiction over Plaintiffs' claims, construed as alleging state law breach of contract. *Silverman*, 761 F.3d 277. On remand, this Court concluded that Plaintiffs' allegations sufficiently alleged state law claims for breach of contract but held that the claims were preempted by Section 301 of the LMRA. *Silverman v. Miranda*, 116 F. Supp. 3d 289 (S.D.N.Y. 2015) ("*Miranda IV*"). The Court granted Plaintiffs leave to amend their Complaint a second time to assert violations of the

---

[2] Plaintiffs also brought claims against the AWF and another entity, both of whom were subsequently voluntarily dismissed with prejudice from this action. Docs. 160 & 243.

[3] *See also Fishbein v. Miranda*, 670 F. Supp. 2d 264 (S.D.N.Y. 2009) (Jones, J.) ("*Miranda I*") (granting in part and denying in part Defendants' motion to dismiss); *Fishbein v. Miranda*, 785 F. Supp. 2d 375 (S.D.N.Y. 2011) (Jones, J.) ("*Miranda II*") (granting in part and denying in part Plaintiffs' motion for partial summary judgment and directing Defendants to provide Plaintiffs with an accounting), *vacated sub nom. Silverman*, 761 F.3d 277.

4

LMRA, and Plaintiffs did so on August 13, 2015.  Doc. 325.  The parties' cross-motions for summary judgment are now before the Court.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

When both parties move for summary judgment, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III. DISCUSSION

### A. Defendants are Liable for Breaching the CBAs.

Defendants do not dispute that they have failed to remit any portion of the Duane Reade settlement proceeds to Plaintiffs, or to remit employer contributions to Plaintiffs at the $8 rate specified in the CBAs. Instead, Defendants argue that their actions do not constitute a breach of the CBAs for three principal reasons: First, Defendants argue that Plaintiffs were, at most, incidental beneficiaries of the CBAs who were not entitled to contributions at the $8 rate once the CBAs were amended. Defs.' Mem. at 19–21. Second, Defendants argue that the Local 210 Fund, as a third-party beneficiary of the newly amended CBAs, was entitled to retain the promised increased of employer contributions. *Id.* at 13–16. Third, Defendants argue that regardless of what the AWF's obligations may have been, the Local 210 Fund had no obligation to remit to the UMMF the monies sought by Plaintiffs. *Id.* at 7–12. All of these arguments are rehashed from Defendants' prior briefing and, as the Court has found before, none are persuasive.

As to Defendants' first argument, that Plaintiffs were not intended third-party beneficiaries of the CBAs, the Court has already decided this issue a number of times under New York law, in each instance rejecting Defendants' argument. *See Fishbein v. Miranda*, 670 F. Supp. 2d 264, 274–76 (S.D.N.Y. 2009) (Jones, J.) ("*Miranda I*") (holding that Plaintiffs adequately alleged that they are intended third-party beneficiaries to the CBAs under New York law); April 12, 2010 Order (Doc. 117) (Jones, J.) at 6–7 (denying Defendants' motion for reconsideration on this issue); April 16, 2010 Order (Doc. 118) (Jones, J.) at 7 (reaffirming the prior decision on this issue); *Fishbein v. Miranda*, 785 F. Supp. 2d 375, 384–85 (S.D.N.Y. 2011) (Jones, J.) ("*Miranda II*") (clarifying that the earlier finding was a "legal determination, based on the express terms of the CBAs"), *vacated sub nom. Silverman*, 761 F.3d at 288 (despite taking "no position" on whether the district court correctly resolved the question of whether Plaintiffs were third-party beneficiaries of the CBAs, stating that Plaintiffs allegations "do meet the pleading requirements for state law breach-of-contract claims"); *Miranda IV*, 116 F. Supp. 3d at 300–03 & nn.14–15 (treating the district court's earlier decisions as persuasive authority and holding that Plaintiffs have standing as third-party beneficiaries to the CBAs under New York law). In its most recent decision on this issue, the Court applied the test outlined in the Restatement (Second) of Contracts and found that Plaintiff had shown "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [Plaintiffs'] benefit and (3) that the benefit to [Plaintiffs] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [Plaintiffs] if the benefit is lost." *Miranda IV*, 116 F. Supp. 3d at 301.

Claims under Section 301 of the LMRA are analyzed under the federal common law as opposed to state law. *Livadas v. Bradshaw*, 512 U.S. 107, 121–22 (1994); *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*,

7

35 F.3d 29, 35 (2d Cir. 1994). Analyzing the issue under federal common law, however, does not alter the result. The federal common law and New York law both look to the Restatement (Second) of Contracts to determine whether a party is a third-party beneficiary of a contract. *See Kinek v. Gulf & W., Inc.*, 720 F. Supp. 275, 280 (S.D.N.Y. 1989), *aff'd sub nom. Kinek v. Paramount Commc'ns Inc.*, 22 F.3d 503 (2d Cir. 1994); *Corley v. Jahr*, No. 11 Civ. 9044 (RJS), 2014 WL 772253, at *6 (S.D.N.Y. Feb. 10, 2014). Accordingly, for the same reasons this Court concluded that Plaintiffs are third-party beneficiaries of the CBAs under New York law, the Court now concludes that Plaintiffs are third-party beneficiaries under the federal common law. *See Miranda IV*, 116 F. Supp. 3d at 301–02; *c.f. Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313 (2d Cir. 1990) (explaining, in the ERISA context, that employee benefit funds "occupy the position of a third party beneficiary to the collective bargaining agreement between [the employer] and [the union]").

Next, because Plaintiffs are third-party beneficiaries of the CBAs, their consent was required for any amendment modifying their benefits. *Miranda IV*, 116 F. Supp. 3d at 301 n.13 (citing *Trustees of Four Joints Bds. Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 347 n.6 (S.D.N.Y. 1994)). Plaintiffs never consented to the March and April 2006 amendments to the CBAs that purported to reduce the amount of contributions remitted to the UMMF. Accordingly, those amendments were ineffective, as was the Local 210 Fund's purported right to retain money owed to the UMMF. *Id.* at 301 n.13, 308 ("If the UMMF is an intended third party beneficiary, the amendments to the CBAs are ineffective and the Local 210 Fund breached the original CBAs by failing to remit contributions owed to the UMMF.").

Finally, Defendants' argument that the Local 210 Fund had no obligation to remit monies to the UMMF has already been rejected by the Court numerous times before. *See Miranda I*, 670 F. Supp. 2d at 272–74 (holding that Plaintiffs sufficiently alleged that the Local 210 Fund

8

accepted an obligation to remit monies to the UMMF in accordance with the terms of the CBAs and that the surrounding circumstances indicated that the Local 210 Fund intended to be bound by those agreements); *Miranda II*, 785 F. Supp. 2d at 385 (finding that the Local 210 Fund "accepted the CBAs and acted upon them"); *Miranda III*, 918 F. Supp. 2d at 211 (noting that the Court already ruled on the issue of Defendants' contractual liability and that the Local 210 Fund "assumed all liabilities of the former AWF"); *see also Silverman*, 761 F.3d at 281 (taking no position on whether the district court correctly decided whether the CBAs obligated Defendants to remit funds to Plaintiffs, but stating that the Local 210 Fund "assumed all the liabilities (and 80 percent of the assets) of" the AWF).

Most recently, this Court found that the Local 210 Fund "can be held accountable under the CBAs because, while not a signatory, Defendants 'accepted their obligations under relevant CBAs' 'to accept funds from Contributing Employers and then remit a certain percentage of such funds to Plaintiff UMMF." *Miranda IV*, 116 F. Supp. 3d at 302–03 (quoting *Miranda I*, 670 F. Supp. 2d at 273–74). The Court's prior decision on this issue is now the law of the case. *See United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case.").[4]

---

[4] The Court need not revisit Defendants' argument that the Local 210 Fund did not assume the AWF's liability when it assumed most of its assets. *See* Defs.' Mem. at 10–12. The Court notes, however, that in their moving papers, Defendants assert—for the first time in the long history of this case—that the "Transfer Agreement" on which they relied consistently throughout this proceeding is actually one of many drafts, and that the "Spin-Off Agreement" submitted to the Court for the first time with their papers is the operative document memorializing their transaction with the AWF. *See* Defendants' Rule 56.1 Counter Statement of Material Facts, dated July 15, 2010 (Doc. 148) ¶ 16 (relying on the Transfer Agreement); Defendants' Rule 56.1 Counter Statement of Material Facts, dated February 20, 2015 (Doc. 309) ¶ 15 (relying on the Transfer Agreement); Defs.' Mem. at 10–11 (relying on the Spin-Off Agreement); Declaration of Michael DeBartolome, dated December 8, 2015 (Doc. 358) ¶¶ 7–8 (claiming that "[t]he Transfer Agreement was modified numerous times . . . before it was finalized," and that the Spin-Off Agreement is the "finalized document").

**B. Defendants' Remaining Arguments Lack Merit.**

    **1.  This Court Has Jurisdiction Over Plaintiffs' Claims.**

Defendants raise two challenges to this Court's jurisdiction over Plaintiffs' claims, neither of which is successful.  Defendants first argue that this Court's jurisdiction on remand is limited solely to considering Plaintiffs' state breach of contract claims and, thus, that this Court violated the Second Circuit's mandate by allowing Plaintiffs the opportunity to replead their preempted claims under the LMRA.  Defs.' Mem. at 21–25.  This Court has already considered and rejected Defendants' argument.  *Miranda IV*, 116 F. Supp. 3d at 310 ("Nothing in the Second Circuit's decision limits this Court's jurisdiction to determine 'only' whether supplemental jurisdiction exists over Plaintiffs' breach of contract claims.  Moreover, the Second Circuit itself recognized the possibility that Plaintiffs' state law claims may be preempted.  Thus, the Second Circuit implicitly recognized that this Court would have to decide (1) whether Plaintiffs' claims were preempted, and, if so, (2) how this litigation would proceed.") (citation omitted).

Defendants alternatively argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims under the LMRA.  Defs.' Mem. at 4–5.  Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Accordingly, "[i]n order to sustain jurisdiction over an action under Section 301, the action must allege:  (1) a violation (2) of a contract (3) between an employer and a labor organization or between two labor organizations."  *Smith v. Hickey*, 482 F. Supp. 644, 646–47 (S.D.N.Y. 1979).  Plaintiffs allege that Defendants violated a number of CBAs, all of which are contracts between employers and labor organizations.  The Court thus has jurisdiction over Plaintiffs' claims.

Defendants argue that they may not be held liable under the LMRA because of case law stating that Section 301 actions may only be brought against defendants who are "parties" or "signatories" to the contract alleged to have been breached. *See Smith*, 482 F. Supp. at 647 ("Section 301 . . . does not extend to suits brought against defendants who are not parties to the contract whose breach is alleged."); *see also Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 897 (4th Cir. 1992) (finding that "a suit against a non-signatory of a contract cannot be considered a suit for violation of the contract," in part because "[a] contract governs only the conduct of the parties who have agreed to its terms"); *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th Cir. 1980) (finding that individual employees were not proper defendants in a Section 301 action because those "suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought"); *Gorenflo v. Penske Logistics*, 592 F. Supp. 2d 300, 306–07 (N.D.N.Y. 2009) (same); *Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Const. Corp.*, No. 04 Civ. 0915 (CPS), 2007 WL 526621, at *4 (E.D.N.Y. Feb. 13, 2007) ("The statute extends only to suits brought against defendants who are parties to the underlying collective bargaining agreement."); *Duane Reade v. Allied Trades Council*, No. 04 Civ. 3542 (BSJ), 2005 WL 3038645, at *4 (S.D.N.Y. Oct. 7, 2005) (quoting *Smith*).  Because they are neither "parties" nor "signatories" to the underlying CBAs, Defendants argue that the Court lacks jurisdiction over Plaintiffs' LMRA claims.

The Court does not read these cases as narrowly as Defendants.  In *Smith*, for example, the trustees of one pension plan sued the trustees of two other pension plans in state court, alleging that the defendants violated the parties' private contracts to provide training courses for plan beneficiaries.  482 F. Supp. at 645–46.  The defendants sought removal to federal court, on the basis that the action should be viewed as one involving a breach of the CBA between the plan

11

beneficiaries' unions and employers. *Id.* at 646. The district court found that it lacked jurisdiction over the claims under Section 301, since the complaint did not allege any breach of that CBA and the defendants in the suit were not parties to the CBA "and owe[d] no duties to the plaintiffs under that agreement." *Id.* at 647–48.

The concern animating *Smith* was that a CBA would be invoked to bring federal claims against a party untethered to the rights and obligations created by that agreement. The present case raises no such concern. Here, unlike in *Smith* and the other cases to which Defendants cite, Defendants did owe Plaintiffs duties pursuant to the CBAs. In fact, the very reason this Court found Plaintiffs' claims preempted by the LMRA was because "Plaintiffs' rights have no independent basis separate from the CBA[s]." *Miranda IV*, 116 F. Supp. 3d at 310. It would surely work an injustice to find that Defendants violated Plaintiffs' rights but that Plaintiffs had no remedy, because the same statute that preempted their claims also proscribed them. The Court finds that such a result is simply lacking in reason here.

In sum, Plaintiffs are third-party beneficiaries who—by definition—have a right to enforce the CBAs. *See Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257–58 (S.D.N.Y. 1994). Regardless of whether Defendants were parties to or signed those agreements, Plaintiffs may hold them accountable for failing to satisfy their contractual obligations.

### 2. The LMRA Does Not Bar Plaintiffs' Claims Against Defendants.

Defendants argue that the LMRA bars suits against union funds, and that Plaintiffs' claims against Defendants must accordingly be dismissed. Defs.' Mem. at 5–7. In support of their argument, Defendants point to Section 301 of the LMRA, which provides, in relevant part, that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 28 U.S.C. § 185(b). The Supreme

Court has explained that the foregoing language "evidences a congressional intention that the union, as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it." *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 496 (1960). Here, Plaintiffs are not seeking to hold Defendants liable for any injury inflicted by a *union*— Plaintiffs are seeking to hold Defendants liable for the injury that *Defendants themselves* inflicted. The language invoked by Defendants is thus inapplicable to the present case.

Defendants rely on *Duane Reade*, but that case is distinguishable. In *Duane Reade*, an employer alleged that union funds and their trustees breached CBA provisions regarding equal representation in voting, appointment of trustees, and distribution of benefits. 2005 WL 3038645, at *4. The employer admitted, however, that neither the funds nor the trustees were parties to that agreement. *Id.* at *4 & n.5. Instead, the employer attempted to hold the funds and trustees liable as mere third-party beneficiaries of the CBA, an action the Court deemed impermissible under Section 301. *Id.* at *4. Here, by contrast, Defendants are not mere third-party beneficiaries of the CBAs—they assumed obligations to Plaintiffs under those agreements. Plaintiffs' attempt to hold Defendants liable for breaches of their *own* obligations is not prohibited by Section 301.

The remaining cases cited by Defendants are also inapposite, as they involve attempts to hold union funds liable for wrongs committed by unions. *See Lewis*, 361 U.S. at 495–96 (holding that a union fund's claim against an employer for failure to remit payments pursuant to a CBA could not be subject to offset because of the union's breach); *Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Emps., a Div. of RWDSU, AFL-CIO*, 717 F.2d 726, 728, 730–31 (2d Cir. 1983) (affirming the district court's determination that an employer's breach of contract action could not be maintained against union funds, where the employer claimed that the union breached the CBA).

13

### 3. The CBAs Do Not Compel Plaintiffs To Arbitrate Their Claims.

Defendants argue that the CBAs upon which Plaintiffs base their claims all contain mandatory arbitration provisions and that, because Plaintiffs never sought to submit their dispute with Defendants to arbitration, Plaintiffs failed to exhaust their administrative remedies. Defs.' Mem. at 16–19. Plaintiffs raise three arguments in response: First, Plaintiffs argue that Defendants waived their right to compel arbitration, since this is the first time Defendants have raised the issue. Pls.' Mem. at 18–19. Next, Plaintiffs argue that the relevant arbitration provisions are not part of the record and, thus, there is no evidence supporting Defendants' argument that the CBAs require the parties to arbitrate. *Id.* at 19–20. Finally, Plaintiffs argue that submitting this dispute to arbitration now would be futile. *Id.* at 21. Without the need to address Plaintiffs' arguments, the Court finds that Plaintiffs were not required to arbitrate their claims.

In *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), the Supreme Court considered whether fund trustees who were third-party beneficiaries of CBAs were bound by the arbitration clauses provided therein. *Id.* at 371. The Court acknowledged the general presumption in favor of arbitrating labor disputes but concluded that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements." *Id.* at 371–72. Instead, the Court looked to the terms of the CBAs to determine whether they evidenced an "intent on the part of the parties to require arbitration of disputes between the trustees and the employers," ultimately concluding that they did not. *Id.* at 372–73. Courts since *Schneider* have continued to analyze whether a CBA calls for benefit funds to arbitrate claims for unpaid contributions as opposed to presuming the arbitrability of those claims. *See, e.g.*, *O'Hare*

14

*v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 168 (2d Cir. 1984) (affirming the district court's determination that the agreement's general arbitration provision did not apply to trustees); *Trustees of the Hollow Metal Pension Fund v. Morris Fine Furniture Work Shops Inc.*, No. 13 Civ. 1660 (PAC), 2013 WL 5912162, at *2 (S.D.N.Y. Nov. 4, 2013) (finding no evidence of intent to bind trustees to arbitration).

Along with their reply papers, Defendants submitted copies of the arbitration provisions from seven of the CBAs. *See* Declaration of Michael A. DeBartolome, dated December 9, 2015 (Doc. 359), Exs. A–G. Assuming arguendo that these provisions are properly before the Court, the Court finds no evidence therein of an intent to bind Plaintiffs to arbitration. Two of the CBAs do not even mandate arbitration. *Id.*, Ex. C ("In the event the grievance is not settled, it *may* be submitted to arbitration . . . .") (emphasis added), Ex. E ("[T]he parties hereto *may* submit the matter to arbitration . . . .") (emphasis added). One of the agreements permits only employees to invoke the arbitration process. *Id.*, Ex. F (providing that the parties shall attempt to settle any dispute concerning the breach of any term of the agreement after "[a]n employee and/or his or her shop steward" first "take[s] up the grievance or dispute with the Company"); *see Schneider*, 466 U.S. at 375 ("It is unreasonable to infer that the parties to these agreements, or to the trust agreements, intended the trustees to rely on the Union to arbitrate their disputes with the employer."). And the remaining agreements all provide that the costs of arbitration "shall be borne equally by the Employer and the Union." DeBartolome Decl. (Doc. 359), Exs. A, B, D, F, G. "Because arbitration may be expensive, there is no reason to assume, without more persuasive evidence than is presented here, that the Union intended to incur such expenses at the request of the trustees and without any requirement that the trustees provide reimbursement." *Schneider*, 466 U.S. at 375.

As the arbitration clauses submitted by Defendants do not establish an intention to require Plaintiffs to arbitrate their claims, Plaintiffs cannot be said to have failed to exhaust their administrative remedies before bringing this suit.

## C. The Court Adopts the Previous Damages Award.

Plaintiffs argue that Judge Jones's now-vacated award of $2,460,777.33 plus interest remains the correct amount of damages to compensate for Defendants' breach. Pls.' Mem. at 23–24; *see Miranda III*, 918 F. Supp. 2d at 212–21. However, Plaintiffs ask the Court to award pre-judgment interest at a rate of 9%, contrary to the statutory rate previously awarded. *Id.* at 24–25. In response, Defendants largely rehash arguments they previously made. Defs.' Opp'n Mem. at 20–24. Having considered the parties' arguments, the Court agrees with the prior calculation of damages in this case.

The parties have not supplemented the Accounting relied upon in the years since first submitting it to the Court. That Accounting summarizes the records of all monies received by the Local 210 Fund, pursuant to the relevant CBAs, from January 1, 2005 to December 31, 2010. Pls.' 56.1 ¶¶ 34, 44. The Accounting reflects a calculation of $1,909,736.26 allegedly due to the UMMF. *See* Declaration of Barry N. Marzigliano, dated March 22, 2012 (Doc. 190), Ex. A.

The facts of this case have not changed since the parties previously briefed this issue, and the parties largely rely on the arguments they previously made. Plaintiffs had argued that the Accounting figure was incomplete in several material respects, namely that the amount: failed to reflect $89,491.53 owed to the UMMF from the settlement with Duane Reade; improperly offset $73,285.36 from the Local 210 Fund's liability;[5] omitted $103,302.64 in contributions made by Manhattan Drug Company pursuant to its CBA; and omitted $284,961.54 in contributions made

---

[5] Defendants now concede that the Accounting should be adjusted to add the amount of the improper offset. Defs.' Opp'n Mem. at 20.

16

by certain other Contributing Employers pursuant to their CBAs. In its now-vacated decision, the Court agreed with Plaintiffs and awarded them a total of $2,460,777.33 in damages, plus pre- and post-judgment interest.

Although *Miranda III* is no longer binding on this Court, it was vacated on grounds unrelated to damages, and the Court treats the decision as persuasive authority as to those issues. *See Brown v. Kelly*, 609 F.3d 467, 476–77 (2d Cir. 2010). Finding no reason to depart from the sound reasoning of this portion of the Court's prior decision, the Court adopts in its entirety the rationale for the prior award. *See Miranda III*, 918 F. Supp. 2d at 212–21.[6]

## IV. CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is DENIED, and Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Plaintiffs' motion is denied with respect to their request for pre-judgment interest at a rate of 9%, and granted in all other respects. Plaintiffs are awarded judgment in the amount of $2,460,777.33 plus interest.[7] The Clerk of the Court is respectfully directed to terminate the motions, Docs. 340 and 351, and close the case.

It is SO ORDERED.

Dated:   September 30, 2016
         New York, New York

Edgardo Ramos, U.S.D.J.

---

[6] In his concurring opinion in *Silverman*, Judge Calabresi recognized that this Court on remand would likely reach the same result as before. 761 F.3d at 289 (Calabresi, J., concurring).

[7] Pre-judgment interest is to be calculated from April 1, 2006, "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" that date. 28 U.S.C. § 1961(a); *see Miranda III*, 918 F. Supp. 2d at 220 ("[W]hile this award may be less than the amount Plaintiffs proposed, any award to the UMMF will necessarily be paid out from funds that otherwise would assist the beneficiaries of the Local 210 Fund."). Post-judgment interest is to be calculated in accordance with 28 U.S.C. § 1961(a).